STATE OF IOWA, Appellee, v. JOHN OCKIJ, Appellant.

**Practice:** CONTINUANCE: DILIGENCE.  Where a motion for continuance
1     on the ground of an absent witness was not made until the day
set for trial, and the party knew more than two months before that
the witness had left the state but made no effort to reach him in
any manner, and there was no showing that his whereabouts were
known or probability that his testimony could be procured if the
cause was continued, there was no abuse of discretion in refusing
the motion.

**Criminal law:** ASSAULT: INCLUDED OFFENSES: INSTRUCTIONS.  On a
2     prosecution for assault with intent to do great bodily injury, which
is an injury to the person of another of a more serious character
than an ordinary battery, the court should determine whether there
is any evidence which would justify conviction for assault or assault
and battery, and if there was then the jury should be instructed
regarding such included offenses, otherwise no such instruction need
be given.

**Same:** ASSAULT: PRESUMPTION AS TO INTENT.  Where one assaults and
3     inflicts upon another an injury of a more serious character than an
ordinary battery, the presumption is that he intended to inflict
great bodily injury, in the absence of evidence tending to show an
intention to inflict a less injury.

**Same:** INCLUDED OFFENSES: EVIDENCE.  On this prosecution for assault
4     with intent to kill in which defendant was convicted of assault with
intent to do great bodily injury, the evidence is reviewed and held
to raise no issue involving the lesser offenses, and the court therefore
properly refused to instruct regarding the same.

**Same.**  In the absence of evidence tending to show that defendant, who
5     committed an assault with a deadly weapon and inflicted great bodily
injury, intended a less injury, the jury should not be permitted to
speculate upon a state of facts involving a less injury for the pur-
pose of reducing the offense.

**Same:** INSTRUCTIONS: SELF-DEFENSE.  Where the evidence for the state
6     showed that defendant deliberately aimed a revolver at prosecutor
and fired, which was not denied, but defendant claimed that he did
not intend to shoot him, and there was no evidence that the shooting

was accidental, an instruction that defendant claimed that he discharged the revolver without aiming it was properly refused.

**Same.** Defendant's claim that he did not intend to injure the prosecuting witness, but discharged his revolver to ward off an assault upon him, was sufficiently covered by an instruction that unless his act was with the intent to commit the crime charged the jury should find him not guilty.

**Same:** INSTRUCTIONS: SELF-DEFENSE. Where the only defense aside from the plea of not guilty was a plea of self-defense, and the court fully instructed as to the plea of not guilty and upon the minor offenses included in the charge, the fact that the instructions on the question of self-defense related solely to that issue was not erroneous; as the instructions will be construed together.

**Same:** INTENT: PRESUMPTION. The law presumes that a person intends the result or consequences which ordinarily follow his intentional act, but such presumption is not conclusive, and it is for the jury to determine from all the circumstances whether the act was done with such intent.

*Appeal from Monroe District Court.*—HON. D. M. ANDERSON, Judge.

TUESDAY, FEBRUARY 10, 1914.

DEFENDANT was indicted, charged with the crime of assault with intent to commit murder, was convicted of assault with intent to inflict a great bodily injury, and appeals.— *Affirmed.*

*John T. Clarkson* and *N. E. Kendall,* and *David Streiff,* for appellant.

*George Cosson,* Attorney General, and *John Fletcher,* Assistant Attorney General, for the State.

PRESTON, J.—I. It is said the court erred in overruling defendant's motion for a continuance. The motion was based

upon the absence of one Gulic, who was desired by defendant as a witness. It appears there were six persons present at the time of the shooting, four besides the defendant and the prosecuting witness. Of these, the prosecuting witness and one other testified for the state, and the defendant for himself. Of the three others, defendant claims two were friendly to the state. Of these two, one had gone to New Mexico, and the whereabouts of the other was unknown. The other, Gulic, was desired as a witness for defendant. It is shown that Gulic left Buxton, in Monroe county, and went to Illinois some two months before the trial; that he promised to return and testify for defendant at the trial, but, instead, went to Pennsylvania.

1. PRACTICE: continuance: diligence.

On April 21, 1913, the case was assigned for trial and set for May 7, 1913. The motion was not made until the day set for trial. The indictment was returned September 19, 1912. It is shown that the defense knew some time before the trial that Gulic was going to leave the state. There was no showing of any attempt to reach the witness, either by mail, telegraph, or by service of subpœna. There is no showing of any effort to locate the witness in Pennsylvania, nor is it shown that his whereabouts in Pennsylvania is known, or any probability that the testimony could be procured if the case had been continued. Under the circumstances, there was no abuse of discretion in overruling the motion.

II. The court did not instruct as to included offenses below that for which defendant was convicted. It is contended by appellant that the court should have instructed as to assault and battery and simple assault, and that, for the failure to do so, there was error. It seems to be admitted by counsel for both the defendant and the state that the test is whether there was any evidence tending to support the lower degrees or grades of the charge in the indictment, and, if so, then the court should not assume the functions of the jury,

2. CRIMINAL LAW: assault: included offenses: instructions.

but should instruct as to such lower degrees of which there is evidence, even though such evidence is not strong.

The court must determine whether there is any substantial evidence of such lower degrees, and, if there is none, it is not error to fail to instruct as to them. It is undoubtedly true that in many cases where a person is charged with assault with intent to inflict great bodily injury, or a higher assault, the lower degrees of assault and battery and simple assault would be included. But this depends upon the character of the assault, the weapon used, the character of the injury, and the intent.

Because of the verdict, it is not necessary to discuss the higher degrees than that for which the conviction was had. A great bodily injury is an injury to the person of a more grave and serious character than an ordinary battery, but it cannot be definitely defined. *State v. Gillett*, 56 Iowa, 459.

Where a person makes an assault on another and inflicts upon him an injury of a more grave and serious character than an ordinary battery, the presumption

3. SAME: assault: presumption as to intent.

is warranted that he intended to inflict a great bodily injury, if there is no evidence tending to show that he intended a less injury. *State v. Gillett, supra.*

The question is: Was there in this case any evidence tending to show that defendant intended less

4. SAME: included offenses: evidence.

than a great bodily injury, or any evidence upon which a verdict of assault and battery or simple assault could be sustained?

The shooting occurred about June 22, 1912. Andrew Zeber, who is also referred to in the record as Zever, the prosecuting witness, had been expelled or suspended from some lodge or society a week or two before this shooting, for nonpayment of dues. As to the transaction in question, he testified that on the night of the shooting he went home to his boarding house, through the room where the shooting afterwards took place, and went on upstairs to his own room. Later he went downstairs and inquired of Green, the pro-

prietor, whether his buddy had come yet, and was told he had not come. That defendant and two or three others were talking about lodge, and Zeber told them it was no use to talk about that there, but to go and talk at the meeting. Defendant said, ''Hello, Andrew,'' and Zeber said, ''Hello.'' Continuing in the language of the witness:

He says, 'I heard you wanted to fight me.' I say, 'No, no, John; I never fight nobody; I don't want to fight.' I say, 'No, no, John; I know you, John.' He told me—he says, 'All right, I will give you this time,' and he took a pistol from his pocket, quick, straight at my head. When he took the pistol out of his pocket, he was on one side of the table and I on the other; ordinary dining room table, I was talking with him, facing him. When I saw the pistol I put my hand up like that (indicating). I was scared of that pistol. The bullet came just through my arm and struck me here; struck me on the cheek. It was a 32 pistol. The bullet went through my arm and broke the bones. After I was shot John kept his revolver in his hands and went outside.

On cross-examination, he further testified:

I am sure he said, 'All right, I will give you this time.' He took a pistol from his right hip pocket; he had the trigger and shot me right straight to my head. He was pretty close. He measured until he got in line with my face, and then I put my hand like that (indicating). I was scared of the pistol. He measured straight to my head and then shot.

Zeber was a foreigner, and did not, perhaps, express himself as we would, but we take this last evidence of his to mean that defendant aimed the pistol directly at his head. Another witness gives the distance between them as six feet. Another witness for the state corroborates this witness in these matters. It is clear that Zeber put his arm up before his face when he saw the pistol, just before the shot. This is shown by Zeber's evidence and by the medical evidence. The physician who dressed the wound testifies that Zeber was

shot through the forearm and that there was an abrasion on his cheek. He says:

The wound began on the outer surface of the forearm, coming out on the inside; there was a compound commuted fracture, which means that the bone was shattered in small pieces. This long scar was necessary because it was necessary to open it up to go in and get the small particles of bone. I took from the arm small particles of bone. It appeared to be a bullet wound. I dressed and looked after the arm for a period of ten or fifteen weeks—maybe longer. My attention was called to a wound on the face. I think on the left cheek —what we call an abrasion—simply a loss of skin tissue; it wasn't a deep wound; it was in a streak like.

Defendant testified in regard to the transaction:

I went to Green's house that night about 9 o'clock. I remember when Mr. Zeber came in. It was about eleven o'clock. I had some money of the society that day, about $60. I had a revolver on my person that night. I had the revolver because I had this money on my person. When Zeber came downstairs, Mike Schleresco says, 'Andrew, do you see that man, John Ockij, who put you out of the lodge?' He said, 'What do you think? That ——— throwed me out!' I asked him, 'Andy, I never throwed you out of the lodge; the president, he put you out.' Zeber appeared to be angry. He called right away to me, 'What for did I throw him out of the lodge?' I say, 'I can't do that; the lodge president stands for that, not me.' I tell Andy Zeber that way. He says, 'You, damn.' He took his left hand and got his right hand in his pocket; stick his left hand to my eye. I was behind the table. I got no chance to get out. When I got up, Mr. Gaspar stand up and drop the bottle of beer, and says, 'You better sit down, you damn son of a b———.' I had trouble with Gaspar two weeks before that. When Gaspar said that, I grabbed my gun like that because I wanted to get out. I had heard about Zeber running after Jarnico before that with a gun. John Baker told me. At the time he throwed his hand back to his pistol pocket I thought he was going to shoot me—to take my life. Q. Was it in that belief that you pulled your gun? A. I wanted to scare him and

wanted to get out. It was after I had made this statement that Gaspar told me to sit down. When I fired the shot I didn't want to shoot anybody. I wanted to scare them and get out. After I fired this shot I backed out of the room because I am scared of them fellows, Mr. Gaspar and Schleresco. I had not had any trouble with Zeber prior to that. I had never had any misunderstanding with him except about this lodge. I never had any desire to injure him at all.

On cross-examination, he testified:

I knew when I went into Green's house that that was where Zeber boarded. I knew about 4 o'clock that afternoon that he was cursing me and mad at me. I got this lodge money the Sunday before. Q. You carried it around in your pocket ever since—from Sunday until Saturday night? A. No. I sent the money in the bank. I didn't carry any money at Green's house. I went to the bank with the money about 4 o'clock. After I left the bank I was working a little bit and then went to supper. I forgot to leave the revolver. I live two blocks from Green's house. I never saw Zeber when he came in the house or until he came downstairs. He came downstairs when he called me these names. Q. When he put his hand back there and put his fist, right then you thought about the revolver? A. Yes. Q. You didn't forget it then? A. I like to see. He was standing about six feet from me when I shot. I did not see any other revolver than the one I shot with. He put his hand to his pocket. I want to scare. I wanted to go out. I didn't want to fight.

In rebuttal, Zeber denied that he put his hand back to his pocket or that he put up his fist at defendant; says that he did not have a revolver; that he never carried one; and denies that he called defendant the names as stated by defendant.

We have set out the evidence somewhat in detail. From it there is no theory upon which a conviction for assault and battery or simple assault could be sustained. The theory of the defense at this point is, as they state it, that an assault and battery is an unlawful wounding the person of another; hence, if defendant, in a reckless manner, flourished a revolver

and discharged the same, and the ball took effect in the person of the prosecuting witness, even though he did not intend to injure the prosecuting witness, a conviction of assault and battery could and would be sustained.

The trouble with this contention is that there is not a word of evidence in the record that defendant flourished his revolver. The evidence of Zeber is specific that defendant deliberately aimed a deadly weapon directly at the head and fired, and this is in no manner denied by defendant or any one else. A great bodily injury was inflicted with a deadly weapon, and there is no evidence that a less injury was intended. This being so, the presumption is warranted that he intended to inflict a great bodily injury, if, indeed, defendant did not intend to kill. Such presumption is not conclusive, to be sure, but there is no evidence against it. The jury ought not to be allowed to speculate upon a supposed state of facts, of which there is no evidence, in order that they may reduce a serious crime to a trifling misdemeanor. To say that a man may use a deadly weapon and inflict a wound such as that described in this case, under the circumstances here shown, and that he may be convicted of a simple assault or assault and battery, would be to make a mockery of the penal statutes and of the enforcement of the law.

5. SAME.

This court has repeatedly held that it is not error to fail to instruct on a lower offense or degree of an offense which might be included in that charged, but of which there is no evidence. *State v. Cody,* 94 Iowa, 169; *State v. Reasby,* 100 Iowa, 231, and cases at page 238; *State v. Dean,* 148 Iowa, 566, and cases at page 576; *State v. Luther,* 150 Iowa, 158; *State v. Brown,* 152 Iowa, 427.

We shall refer to defendant's cases. Counsel cite *State v. Welsh,* 73 Iowa, 106. In that case the indictment charged that defendant made an assault upon one Goetz and beat and bruised him. The court said the evidence was such as to show defendant guilty of assault and battery, and that the

jury should have been instructed as to that offense. It does not appear that a weapon was used, nor is the character of the injury shown to have been serious. They also cite *Dixon v. State*, 3 Iowa, 416, and *State v. Shepard*, 10 Iowa, 130, to the effect that a simple assault is included in a charge of assault to commit murder. It may be so, but it is not necessarily the case. We can conceive of a case where a person is charged with murder and where the evidence might be such as to require instructions upon assault and battery. For instance, suppose a parent is accused of whipping a child to death with a whip or stick. The evidence might show that the limit of proper chastisement had been exceeded, and yet the jury might find that the death was produced from other causes. But ordinarily, under such a charge, assault and battery is not included. It depends upon the evidence. An indictment for rape may include simple assault. *State v. Vinsant*, 49 Iowa, 244. It was said in that case that under the indictment defendant might, if the evidence warranted it, have been convicted of simple assault. The evidence was such that it was for the jury to say whether the defendant may not have intended something else. There were circumstances in that case having such tendency. Such was the case also in *State v. Trusty*, 118 Iowa, 498. But assault and battery is not necessarily included in the charge of rape or forcible defilement. *State v. McDevitt*, 69 Iowa, 549; *State v. Dean, supra*. Ordinarily, in rape cases, a pistol or other deadly weapon is not used, though, of course, it might be. Furthermore, in rape cases it depends upon the form of the indictment, as well as upon the evidence, whether the instructions should cover lower included offenses. *State v. Desmond*, 109 Iowa, 72; *State v. Miller*, 124 Iowa, 430; *State v. Egbert*, 125 Iowa, 443; *State v. Johnson*, 133 Iowa, 38. So it is in a robbery case; if the indictment charges included offenses, and there is evidence to justify it, the instructions should cover such included offenses. *State v. Duffy*, 124 Iowa, 706. But this is not required

unless there is such evidence. *State v. Reasby, supra,* and cases therein cited.

III. It is argued by appellant that the prosecuting witness was struck by accident. This matter is suggested for the first time in the reply argument.

Defendant requested four instructions on the question of self-defense, but did not offer any on the theory of accident. Defendant filed his affidavit in support of the motion for a continuance, and in it stated that he expected to prove by Gulic that he (defendant) was first assaulted by Zeber, and that he shot to scare. As a witness, he did not claim that he shot over Zeber's head and that Zeber threw up his hand above his head and was, by reason of that, hit by the bullet, or that it was an accident.

We are not required to determine whether, under such circumstances, the court should have instructed as to the lower degrees because, as we have shown, there was no such evidence. It is true that defendant claimed he did not intend by what he did do to shoot Zeber, but he does not deny that he deliberately took aim at Zeber's head and fired. His claim, or one of his claims, is that in doing that he did not intend to shoot Zeber, but only to scare him and the others. He also claims that Zeber put his hand to his hip pocket, and that he (defendant) thought Zeber was going to take defendant's life. As to this, it would be inconsistent to say that defendant thought his life was in danger and that he fired his own pistol to prevent it, but that it was accidental.

IV. As before stated, defendant requested four instructions on the question of self-defense. They were refused, but the court did instruct on that question substantially as requested and in so far as they were applicable to the evidence. We shall quote one of those so requested.

6. SAME: instructions: self-defense.

(1) The defendant admits in his evidence that he discharged the revolver that resulted in the wound upon the

arm of the prosecuting witness, but he claims that imme-
diately preceding the discharge of said revolver the said
Zeber had threatened the defendant with physical injury,
had cursed the defendant, and had shaken his fist at him in
a menacing and threatening manner, and had thrust his hand
in his hip pocket as though to procure and draw a revolver
or other deadly weapon, and that he, the defendant, in the
belief that he was about to be attacked by the said Zeber with
a dangerous and deadly weapon, and that said attack threat-
ened his life or serious injury to his person, and having no
means of escape, and in order to protect his life and person
from such serious injury, *he discharged said revolver without
aiming it at the said Zeber, and without intending to injure
him, or to do more than compel him and his associates to
desist in the assault they were, as the defendant believed,
about to make upon him.* You are instructed in relation to
this claim that, if the defendant in what he did entertained a
reasonable belief that he was in danger of losing his life or
suffering great bodily harm, he was justified in defending
himself, though the danger be not real but only apparent;
and he was justified in using such force and means in defend-
ing himself as in good faith appeared reasonably necessary
to him as an ordinarily prudent man under all the circum-
stances surrounding him at the time. All that was required
of him was that he act from reasonable and honest convic-
tions as to his danger, although he might have been mistaken
as to the extent of such danger. And, if you find from the
evidence that at the time the shooting occurred the said Zeber
was about to make an assault upon the defendant, and that
from the language, demeanor, and motions of the said Zeber
the defendant had reason to believe, as an ordinarily prudent
man, and did in good faith honestly believe, that he was in
danger of being killed or suffering great bodily harm, then
he was justified in using such force as appeared to him, as
an ordinarily prudent man, necessary to protect his life and
person.

We quote this one because it contains the clause in italics,
which was not included in the instructions given by the court,
at least not in the same connection, though we think it was
properly covered in others which were given. As to that part
of the italicized clause which read, that defendant "dis-

charged said revolver without aiming it at the said Zeber,"
we have already shown there was no such evidence, and we
have already referred to the suggestion now claimed for this,
that it was accidental.

The thought in this clause that the shot was fired by de-
fendant without intending to injure Zeber is covered by in-
struction No. 13, given by the court, wherein the court directed
the jury that, unless the jury found from the
7. SAME.          evidence and beyond a reasonable doubt that
defendant discharged the revolver at Zeber, with intent to
inflict a great bodily injury, they should find the defendant
not guilty of any crime, but acquit him. Instructions eleven
and twelve cover the same idea as to the higher degrees. The
remainder of the clause in italics is covered by the instructions
on self-defense and, as we have said, substantially as asked.

V. We have discussed the points most strongly urged.
Others will be referred to briefly. It is said that by the in-
structions on self-defense the court narrowed the issue to self-
defense alone. We are unable to discover
8. SAME: instruc-
   tions: self-
   defense.          that there was any other defense. True, the
defendant entered a plea of not guilty, but
the court, in other instructions, fully and specifically in-
structed as to this and the elements constituting the offense
charged, and included offenses, and then took up the ques-
tion of self-defense and instructed as to that. It is not prac-
tical to give all the law in one instruction; the instructions
must be considered together.

It is said that instruction No. 9 placed upon defendant
the burden of proving that the shot was not fired with the
intent charged. We do not think it is sus-
9. SAME: in-
   tent: pre-
   sumption.          ceptible of such a construction. It is similar
to an instruction in *State v. Gillett, supra,*
and other cases which have been approved.

The law warrants the presumption or inference that a
person intends the results or consequences to follow an act,
which he intentionally commits, which ordinarily do follow

such acts. Instruction No. 9 should be considered with No. 13, before referred to, and the other instructions. It was admitted that defendant shot Zeber. He claimed the shooting was done for the purpose of defending himself and scaring Zeber and the others. If the act was not justified, intent would be inferred or presumed. The presumption would not, of course, be conclusive. It was for the jury to say, from all the circumstances, whether or not the act was done with the intent charged, and the jury were so told. See further, in support of instruction No. 9, *State v. Bennett,* 128 Iowa, 713; *State v. Woodward,* 84 Iowa, 172; *State v. Jones,* 70 Iowa, 505.

There was no error, and the judgment is—*Affirmed.*

LADD, C. J., and EVANS and WEAVER, JJ., concurring.