STATE OF IOWA, appellee, v. RICHARD LEE CLOUGH, appellant.

No. 52242.

JANUARY 10, 1967.

Gerald L. Shaffer, of Fort Dodge, for appellant.

Lawrence Scalise, Attorney General, Don R. Bennett and David A. Elderkin, Assistant Attorneys General; Francis E. Tierney, County Attorney, and Mark McCormick, Assistant County Attorney, both of Fort Dodge, for appellee.

LARSON, J.—Richard Lee Clough, a young man 17 years old, was, on April 29, 1965, charged by County Attorney's Information with the crime of burglary with aggravation, in violation of section 708.2 of the 1962 Code. He pleaded not guilty and on June 1, 1965, was tried to a jury. He was found guilty as charged, and the court sentenced him to the Men's Reformatory for a term of twenty-five years as by statute provided. Defendant appeals.

In his appeal defendant assigns as error (1) the admission into evidence of two written confessions which he contends were not voluntarily given, (2) the court's refusal to grant his motion for a mistrial when it appeared there was publicity relative to a pretrial hearing to determine the admissibility of confessions which came to the attention of the jurors during

the trial, and (3) the failure to submit to the jury for a possible verdict the offenses of assault with intent to do great bodily harm and assault and battery. We find no merit in these assignments and affirm the case.

I. It appears that on the night of April 26, 1965, the home of Mrs. Hill, a widow living alone in Fort Dodge, Iowa, was broken into and she was assaulted and stabbed by a youth who demanded money. She gave him some money and he left, but not until after she had turned on the lights and had recognized the intruder. Mrs. Hill then called her son who notified the police and they came to her assistance. She was taken to the hospital for care and the treatment of her stab wounds.

Acting on the description furnished by her, the responding policemen brought two pictures of the suspect to the hospital. When she identified defendant's picture, the officers went to his residence nearby and found him in bed wearing his clothing, with the exception of his shoes. A muddy pair of loafers, along with several spent wooden matches later were found on the basement stairs of Mrs. Hill's house, and the basement window appeared to have been forced open. Defendant was taken to the police station, and on the way the officers told him someone had broken into Mrs. Hill's house and had attacked her. He was asked if he had done it, and he replied that it was a "bum rap." Apparently he was asked nothing more, and as soon as they reached the station he was allowed to make a phone call. At approximately 2:30 a.m. on April 27, 1965, he was booked and lodged in the juvenile quarters of the city jail.

II. Defendant contends written statements given to Detective Otis Halligan the morning of his arrest, and to the captain of detectives that evening, in their offices, were involuntary and inadmissible into evidence as a matter of fact and law, and that they were obtained in violation of due process. He argues the conditions by which these confessions were obtained were inherently coercive and, although perhaps no single circumstance of police conduct was bad enough to be a violation of due process itself, "the total load of a number of improper circumstances can be" such a violation and make the confessions involuntary. He cites Fikes v. Alabama, 352 U. S. 191, 77 S. Ct.

281, 1 L. Ed.2d 246, and Culombe v. Connecticut, 367 U. S. 568, 81 S. Ct. 1860, 6 L. Ed.2d 1037, as illustrative of his contention that these confessions were not "an essentially free and unconstrained choice by its maker." The proposition is sound and correct, but is it applicable here?

Among the circumstances which defendant believes caused his rights as an accused to be violated were (a) an improper notification of the charge against him (b) not being advised of his absolute constitutional right to remain silent, and (c) not clearly and concisely advising the defendant of his absolute right to contact a lawyer. Complaint was also registered due to an alleged failure to give proper consideration to personal factors in connection with the voluntariness of the defendant's admissions, i.e., his age, mentality, education, time and manner of his interrogation by police, and an alleged threat or inducement to get the confessions. The trial court did not believe they add up to a denial of due process, and neither do we.

III. Two court-appointed attorneys represented defendant in these proceedings. In response to their request defendant was ordered sent to the Mental Health Institute at Cherokee, Iowa, on May 4, 1965, "for evaluation and diagnosis, observation and treatment as the Mental Health Institute shall deem necessary", as an aid to the preparation of his defense to the crime charged. A report on his mental condition was made to the court on or about May 28, 1965. Thereafter, a motion to transfer the cause to juvenile court was made and, after hearing, rejected by the court.

The Institute report advised that the defendant had a "full-scale I. Q. of 74" and was considered a " 'moderate mental defective.' " No demonstrable organic brain damage was found, and the low I. Q. was considered present since birth. Although it is not expected to rise appreciably in the future, the experts opined that with proper training he could probably learn to function in society better than he has, in spite of his handicap. "He is not psychotic, is not out of contact with reality and he knows the nature and consequences of his behavior."

It also appears defendant had been in a special education class in the Fort Dodge schools since the seventh grade, and was classified as an "educable mentally retarded student." He

reached the ninth grade before leaving school, and at this time could not read or write too well. The school psychologist had not examined defendant, but from the test made in 1961 evaluated defendant's I. Q. at 69 at that time, and stated at that level he was only able to do fifth grade work in school.

It is quite clear defendant was given every opportunity to show he was unable to comprehend questions, make decisions and take considered actions, but failed to convince the trial court his limited intellect precluded a voluntary act. In its ruling on the admissibility of the confessions involved herein, the trial court stated: "The Court has considered all of the evidence offered by both sides, including the fact that the defendant has an intelligence quotient of 74, and is convinced beyond a reasonable doubt that the oral admissions were made and the written statements given voluntarily by the defendant." The court then wisely observed, "A person, even though of limited intellect, can act voluntarily * * * do so everyday in decisions they make and actions they take." We agree. Certainly there is nothing in this record to indicate defendant's limited intellect had anything to do with the crime, nor affected his ability to understand the request for a true statement as to what occurred at the Hill home, nor the import of the statements he was giving the officers.

With this background we turn to the evidence of admission made to the officers after his arrest on April 27, 1965. Both of the arresting officers testified they told defendant of the entry of the Hill house and the attack upon Mrs. Hill. This he did not deny, and, therefore, it appears he was fully and completely informed as to the offense for which he was being detained. True, these officers did not at the time advise him of his rights, but beyond asking if he did it, they did not interrogate him further.

IV. Before admissions or confessions may be admitted in evidence as voluntary, pursuant to custodial interrogation, we have said it must appear the interrogation was free from coercion or mistreatment of the defendant, that the statements were given without threats or promises. State v. Mullin, 249 Iowa 10, 14, 85 N.W.2d 598, and citations.

1356

■ Detective Halligan testified he questioned defendant twice on the morning of his apprehension, once for about five minutes shortly after 8:30 a.m. and later for an hour and a half about 10:30 a.m., which included a trip to the hospital to see Mrs. Hill. Detective Captain Lamb testified he interrogated defendant for a few minutes about five that evening and for a little over an hour beginning at 6:45 p.m. Both testified they advised defendant that he did not have to tell them anything about the matter and that he had a right to have an attorney. The latter said he told defendant that, if he could not pay for an attorney, the State would provide one for him, and that, although he did not have to talk to him, what he did tell him could be used as evidence.

After weighing the evidence, the trial court found defendant had been fully informed of his right to an attorney and to remain silent, and at the hearing before it on June 1 held certain oral admissions and written statements made by the defendant were voluntarily made without any threats, promises or coercion, and were admissible in the trial of this case. This case being tried prior to our decision in State v. Holland, 258 Iowa 206, 215, 138 N.W.2d 86, 91, the court provided that the circumstances under which these statements were made might be shown at the trial and, under our decisions prior to Jackson v. Denno, 378 U. S. 368, 84 S. Ct. 1774, 12 L. Ed.2d 908, 1 A. L. R.3d 1205, the jury could "determine again the question of voluntariness and what weight, if any, will be given them."

Appellant's denial that he was properly advised of his rights was largely based upon his assertion that he did not understand some words used in the written statement, especially the word "counsel." He asserted that he gave the confessions to get a prompt hearing on his case, that the officers had told him he could be kept in jail until September if he did not confess and give them the written statements. Both officers denied making any such statement, but maintained the confessions were freely given, read over by defendant before they were signed and witnessed, and were asserted as true by him. The trial court further noted the opening paragraph of each written statement which acknowledged that it was voluntarily given, without

threats or promises, and that defendant knew of his right to have a lawyer, and that the statement could be used in evidence. True, these statements were typed by the officers and in one the word "counsel" was used; in the other, the word "lawyer" appeared. We, like the trial court, are not impressed with defendant's lack-of-understanding claim, but assume it was advanced to relate his limited intellect with the instruments signed.

Under the rule we must view the evidence most favorable to the State and, in so doing, we also must find the defendant was clearly advised as to his constitutional rights and that he understood his acts and that there was no coercion exercised upon him to obtain his oral and written confessions introduced herein.

V. The legal problem in this case regarding the use of the confessions turns upon two different confession rationales. The first is the old voluntary-involuntary test, and the second is the new warning test under Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed.2d 977, and related cases. Defendant cites Fikes v. Alabama, supra; United States ex rel. Perpiglia v. Rundle, 221 F. Supp. 1003; Culombe v. Connecticut, supra; Gallegos v. Colorado, 370 U. S. 49, 82 S. Ct. 1209, 8 L. Ed.2d 325, 87 A. L. R.2d 614; Harris v. South Carolina, 338 U. S. 68, 69 S. Ct. 1354, 93 L. Ed. 1815; Haley v. Ohio, 332 U. S. 596, 68 S. Ct. 302, 92 L. Ed. 224; Massiah v. United States, 377 U. S. 201, 84 S. Ct. 1199, 12 L. Ed.2d 246; Spano v. New York, 360 U. S. 315, 79 S. Ct. 1202, 3 L. Ed.2d 1265; Jackson v. Denno, supra; Payne v. Arkansas, 356 U. S. 560, 78 S. Ct. 844, 2 L. Ed.2d 975; Watts v. Indiana, 338 U. S. 49, 69 S. Ct. 1347, 93 L. Ed. 1801; and Turner v. Pennsylvania, 338 U. S. 62, 69 S. Ct. 1352, 93 L. Ed. 1810. We shall not review each of those cases here, but it will suffice to say they disclose no facts similar to those in the case at bar. In Spano v. New York, supra, much relied upon by appellant, it appeared the court looked to the circumstances of the defendant, he being foreign-born and only partially educated, but we think the key to that decision was the coercion revealed by the questioning—relay questioning by six law enforcement officers for periods up to five hours in

length over an extended period of time, and a questionable procedure in the use of an old friend to obtain the admissions. There also the defendant requested several times to see or call his attorney and his requests were rejected. No such circumstances appear here. There were no defendant requests for an attorney made or refused, no long periods of interrogating by batteries of officers and prosecutors appear here, and this defendant was allowed to make a phone call. Except for his claim of being told that unless he confessed he would be kept in jail until September, and his failure to understand the meaning of "counsel", there is not the slightest hint of mistreatment of this 17-year-old of limited intellect.

The warnings here were sufficient to comply with the requirements set out in the Spano and Escobedo cases, and meet our requirements at least prior to Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed.2d 694 (1966); State v. Holland, supra, 258 Iowa 206, 138 N.W.2d 86; State v. Tharp, 258 Iowa 224, 231, 138 N.W.2d 78, 82; State v. Mabbitt, 257 Iowa 1063, 1070, 135 N.W.2d 525, 530; State v. Leiss, 258 Iowa 787, 140 N.W.2d 172; State v. Fox, 257 Iowa 174, 131 N.W.2d 684. Also see Harris v. South Carolina and Turner v. Pennsylvania, both supra. We conclude defendant's confessions were voluntary and admissible both as a matter of law and fact, and hold they were not in violation of any provision of either the State or Federal Constitution.

Although it may be the warnings given were not sufficient under Miranda v. Arizona, supra, it must be remembered that Miranda is nonretroactive, and Escobedo controls this trial.

VI. Defendant's complaint that he was not promptly informed of the specific charge against him, and that the booking charge was changed later in the day after his early morning apprehension, appears to be true. The arresting officers originally booked him on two related charges, but it does not appear defendant knew what they were before they were changed later in the day upon direction of the county attorney. In any event, we fail to find he was prejudiced in any way by this change, and even under Miranda, the knowledge of arrest appears to be sufficient to hold him until the proper charge can be determined

by the prosecuting attorney. When he was arrested, he was told of the circumstances under which he was detained. This seems adequate under both federal and state laws. Miranda sets out the four things which must be told a defendant restrained by the authorities, and the exact charge to be placed against him is not one of them.

█ VII. Appellant next contends his motion for a mistrial should have been sustained when it appeared the local news media released a story to the effect that the court, in advance of the main trial, was conducting a preliminary hearing to determine whether defendant's confessions were voluntary and were admissible in evidence at the trial. He argues the jury foreman, who read the account in the newspaper, unconsciously perhaps would be affected by the court's decision and be inclined to accept as a fact the voluntariness of the confessions when they were introduced into evidence at the main trial. Thus it is contended the juror would not use his own judgment as to voluntariness and would give these statements weight based upon the court's decision, not his own. He refers us to the recent case of Sheppard v. Maxwell, 384 U. S. 333, 86 S. Ct. 1507, 16 L. Ed.2d 600, as authority for the granting of his motion because of possible prejudicial effect on the jurors chosen to hear his case. We find no similarity. The publicity of Doctor Sheppard's case was persistently bad, and rumors were published as evidence. Courtroom decorum ceased to exist and the news media, with and without court approval, made the trial a Roman holiday or gala occasion. The effect on the jury adverse to defendant was obvious. The court here did admonish the newsmen not to release any information they obtained at the hearing, and we find nothing in the stories that even hints at any of the testimony of the witnesses at the pretrial hearing to determine the voluntariness and admissibility of the purported confessions, nor did they disclose the fact that defendant testified. They merely reported that the jury had been picked and released to a future time due to a conflict in the judge's calendar, that defendant was being tried as an adult, and that a hearing was had that morning in the absence of the jury on the question of the admissibility of statements taken from

defendant by police. We fail to find the information given by the news media would reasonably tend to prejudice the jury.

Since Jackson v. Denno, supra, the law requires such a preliminary hearing by the court prior to the main trial in order to determine the admissibility of such statements. Under either the "Massachusetts" or the "orthodox" rule, the fact that such a hearing is held should come as no surprise to a juror. See State v. Holland, supra. Since we have adopted the "orthodox" rule in Iowa and held the question of admissibility is for the court alone, these reports should not prejudice an accused anymore than those occasions in a trial when the jury is excused so that the court can rule on the admissibility of other evidence objected to by counsel. It is not the disclosure of the purpose of the restricted hearing that is wrong, but the news reports of any testimony or statements made at that hearing which may not be considered by the jury. The pretrial publicity here does not rise to the prejudicial level established in Shepherd v. Florida, 341 U. S. 50, 71 S. Ct. 549, 95 L. Ed. 740; Stroble v. California, 343 U. S. 181, 72 S. Ct. 599, 96 L. Ed. 872; Rideau v. Louisiana, 373 U. S. 723, 83 S. Ct. 1417, 10 L. Ed.2d 663; Marshall v. United States, 360 U. S. 310, 79 S. Ct. 1171, 3 L. Ed.2d 1250; and Irvin v. Dowd, 366 U. S. 717, 81 S. Ct. 1639, 6 L. Ed.2d 751. It is not the deluge of improper and prejudicial publicity condemned in Sheppard v. Maxwell, supra, 86 S. Ct. 1507, at 1513.

Prejudice would, of course, be apparent when testimony which is later held to be inadmissible is reported by the press in such a manner that it comes to the attention of the jurors during the trial. Here we think the press and other news media exercised proper restraint, and none of the stories covered a matter which was later held inadmissible. The stories were not inflammatory, intense or repetitive, and in our opinion did not violate either the principle or the letter of the prohibition against prejudicial publicity announced by the United States Supreme Court in any case brought to our attention. The court properly overruled defendant's motion for mistrial.

VIII. There is no merit in defendant's contention that the trial court erred in failing to submit to the jury the possible

verdicts of assault with intent to do great bodily harm and assault and battery.

Section 785.6 of the 1962 Code of Iowa states that the defendant may be found guilty of any offense the commission of which is necessarily included in that with which he is charged in the indictment. We have said this means that the instructions as to the grade or degree of crime should be justified by the evidence. State v. Merrill, 242 Iowa 1156, 1159, 49 N.W.2d 547. Also see State v. Marshall, 206 Iowa 373, 220 N.W. 106, and State v. Ockij, 165 Iowa 237, 145 N.W. 486.

It has also been said, where under the evidence it is clear the defendant is guilty of the offense charged, or not guilty at all, it is not error to fail to give instructions on included offenses. Here the evidence is overwhelming that defendant broke into Mrs. Hill's residence at about 12:30 a.m. on April 27, 1965, made his way to her bedroom, stabbed her three times with a pair of scissors, and terrorized her to obtain money. She identified him and the police found his muddy shoes on the basement steps of her house and a forced basement window in the Hill residence. Defendant admitted the crime orally and in writing to two officers of the Fort Dodge police department. The trial court felt there was no justification in submitting any offense less than burglary, and the jury found him guilty of burglary with aggravation. Since a choice was given to select a lesser offense than that charged and the jury refused to do so, we conclude there was no prejudice in the failure to submit still lesser offenses, and there was no merit in this assignment.

Having found no reversible error, the judgment of the trial court must be affirmed.—Affirmed.

GARFIELD, C. J., and THORNTON, SNELL, MOORE and STUART, JJ., concur.

MASON, J., concurs in the result and all Divisions except Division IV.

BECKER, J., concurs in the result.

RAWLINGS, J., dissents.

RAWLINGS, J.—Being unable to agree with Divisions II through VI, I respectfully dissent.

In this regard see dissent in State v. Leiss, 258 Iowa 787, 793, 140 N.W.2d 172, 176.

I would reverse and remand for a new trial.