STATE OF IOWA, appellee, v. EDWARD LOUIS SEFCHECK, appellant.

No. 52729.

(Reported in 157 N.W.2d 128)

1160

MARCH 5, 1968.
REHEARING DENIED APRIL 8, 1968.

Pasley, Singer & Seiser, of Ames, for appellant.

Richard C. Turner, Attorney General, Wm. A. Claerhout, Assistant Attorney General, of Des Moines, and Charles E. Vanderbur, County Attorney, of Ames, for appellee.

LeGrand, J.—Defendant appeals from judgment following his conviction of uttering a forged instrument in violation of section 718.2, Code, 1966. Before considering his assigned errors, an extended discussion of the unusual circumstances which bring him here is necessary.

On May 23, 1966, defendant bought several small items of merchandise from Hanson's Mobilgas Service Station in Ames, Iowa. In payment he presented a check which he signed in the name of W. C. Tully. Defendant's true name is Edward Louis Sefcheck. The amount of the purchases was deducted from the check, and the balance was given defendant in cash. Because of the unusual identification numbers on the check, Mr. Hanson almost immediately became suspicious of its validity and called the police. An officer of the Ames Police Department and Mr. Hanson together located defendant at a local tavern, where he was questioned concerning the event. Although deny-

ing the check was worthless, defendant returned the $50 to Mr. Hanson. At the same time he was arrested for intoxication, held for investigation, and ultimately charged with uttering a forged check in violation of section 713.3, Code of Iowa.

On June 2, 1966, defendant appeared with his attorney in the District Court of Story County. A plea of guilty was then entered and defendant was sentenced to a term of not more than seven years in the penitentiary at Fort Madison. Defendant filed a petition for writ of habeas corpus in the District Court of Lee County on October 29, 1966, seeking his release on eight separate grounds. The only one important here is that his plea and the subsequent judgment pronouncing sentence thereon were void as being in violation of section 777.12, Code, 1966, which provides:

"The plea of guilty can only be made in open court and *by the defendant himself*, and in the presence of legal counsel acting on behalf of the defendant if the defendant is charged with a felony in substantially the following form: 'The defendant pleads that he is guilty of the offense charged in the indictment', and shall be entered of record. * * *." (Emphasis added.)

The Lee District Court, by an order dated December 20, 1966, found defendant's plea had been made for him by his attorney. The section above set out requires a guilty plea to be made by the defendant personally, and the Lee District Court found the failure to observe that statute rendered the proceedings void. The order of December 20, 1966, included this provision:

"Under sections 663.37 and 663.38 of the 1966 Code of Iowa, the court finds he is required * * * to determine whether an unconditional release is warranted or whether the petitioner should be held for the proper authorities. Under the record in this case, the court finds that the petitioner should be held for proper authorities and returned to the Story County District Court for sentencing. Birk v. Bennett, 141 N.W.2d 576.

"It is therefore hereby ordered that the petitioner Edward L. Sefcheck be returned to the Story County District Court for sentencing in accordance with the requirements of 777.12 of the 1966 Code of Iowa."

. Despite the provisions of this order defendant was not returned to Story County until January 30, 1967, approximately 40 days thereafter. From June 2, 1966, the date he was sentenced under section 713.3, until February 6, 1967, when his present counsel was appointed to represent him, he was without counsel and was at all times in custody. On February 14, 1967, after defendant asked leave to withdraw his plea, the county attorney dismissed the pending information under section 713.3 and filed a new information alleging violation of section 718.2, Code, 1966. The one charges uttering of a false check and the other uttering a forged instrument. The new information was based on the same check and the same conduct as the original charge.

Defendant was tried on this latter charge beginning March 27, 1967. Upon a jury verdict of guilty, judgment was entered sentencing defendant to a term of not more than ten years in the penitentiary at Fort Madison, Iowa, and he now appeals therefrom.

In addition to the general claim there had been such procedural unfairness and lack of due process that the charge should have been dismissed or a new trial granted, defendant assigns these six specific errors: (1) That the Story District Court failed to comply with the habeas corpus order of the Lee District Court. (2) That by the dismissal of the charge under section 713.3 and the filing of one under section 718.2 he was subjected to double jeopardy. (3) That he was denied a speedy trial in violation of section 795.2, Code, 1966. (4) That certain evidence illegally seized and obtained in violation of his constitutional rights was improperly admitted and that he was not properly arraigned. (5) That the State failed to prove one of the essential elements of the charge against him. (6) That he was deprived of a fair trial because of prejudicial newspaper publicity.

It will be noted the first three assignments relate to the dismissal of the original information under section 713.3 and the filing of a new one alleging violation of section 718.2 while the last three are concerned with alleged errors in the trial itself. We discuss them in the order listed.

■ I. Defendant asserts the State's right is limited to prosecuting him for the original offense because the Lee District Court order so provided. Defendant leans heavily on the language in the order returning defendant to Story County for "sentencing." Although this term inaccurately describes what the order provided, the intent and purpose are clear. The Lee District Court found section 777.12 had not been complied with and voided defendant's sentence on that sole ground. Section 777.12 deals exclusively with entry of a plea. This is the defect in the original proceedings which the court found to be fatal. It was only because the plea had been improperly entered that the subsequent sentence was set aside. Therefore returning the defendant to Story County simply for resentencing would have accomplished nothing.

We do not understand the Lee District Court order purported, as defendant claims, to limit the Story District Court to proceeding on the information under section 713.3, nor could it. All that was before the Lee District Court was defendant's petition for writ of habeas corpus on the ground that his detention was illegal. The court found it was and ordered defendant's return to Story County under the authority of Birk v. Bennett, 258 Iowa 1016, 141 N.W.2d 576.

We hold the Lee District Court could only sustain the writ or quash it. If sustained, the Lee District Court could either order his release or return him to Story County for further proceedings there. It could not determine what those proceedings should be.

Birk v. Bennett, supra, offers no support for defendant's position. That decision went no further than to say one whose conviction is set aside on constitutional grounds need not be unconditionally released but may be held for further proceedings which meet constitutional requirements. The fact that there such proceedings involved retrial on the original charge does not imply no other course is permissible.

As part of this assignment defendant asserts the trial court should not have permitted the county attorney to dismiss the original information and file a new one alleging violation of section 718.2. We include this matter in our discussion in Division II.

■■■ II. ·Defendant next claims he was subjected to double jeopardy because· the charge under section 713.3, Code, 1966, was dismissed and a new information was filed alleging violation of section 718.2, Code, 1966, when in fact both were based on the same check and the same facts. The simple answer to defendant's claim is that this cannot be double jeopardy because the proceedings under section 713.3, having later been set aside as void, did not place him in jeopardy in the first place.

■■■ We strongly suspect that defendant, who spent some eight months in the penitentiary on a sentence ultimately set aside upon his petition, will vigorously dissent from our finding that he was not thereby placed in jeopardy. However, jeopardy has a well-established and universally adopted meaning. One cannot be in jeopardy by reason of proceedings before a court which has no jurisdiction to convict or sentence him. A plea of former jeopardy cannot be based on a void sentence. 21 Am. Jur.2d, Criminal Law, section 167, page 232. This is generally true, although there is some authority to the contrary, even if part of the illegal sentence has been served. 22 C.J.S., Criminal Law, section 266, page 687. It is also the general rule that one who procures his own release under habeas corpus because of an invalid sentence cannot rely on former jeopardy and further proceedings against him are permissible. 21 Am. Jur.2d, Criminal Law, section 210, page 254; 22 C.J.S., Criminal Law, section 245, page 647; Birk v. Bennett, 258 Iowa 1016, 1022, 141 N.W.2d 576; United States v. Ewell, 383 U.S. 116, 86 S. Ct. 773, 15 L. Ed2d 627; State v. Dehler, 257 Minn. 549, 102 N.W.2d 696, 89 A.L.R.2d 496; Annotations, 97 A.L.R. 160.

Our recent decision in State v. Gebhart, 257 Iowa 843, 134 N.W.2d 906, lends further support to what we have said. There an information charging murder was dismissed and another information charging the same offense was filed. To a claim that this constituted double jeopardy, we observed at page 849 of the Iowa Reports, "* * * the dismissal of the prior charge did not prevent the State from filing a second, within the limits of the statute of limitations; * * *."

United States v. Ewell, supra, also confirms this view. There the court said, in approving prosecutions under different charges following vacation of a prior conviction for defects in the indictment, "It has long been the rule that when a defendant obtains a reversal of a prior, unsatisfied conviction, he may be retried in the normal course of events. * * * The rule of these cases, which dealt with the Double Jeopardy Clause, has been thought wise because it protects the societal interest in trying people accused of crime, rather than granting them immunization because of legal error at a previous trial, and because it enhances the probability that appellate courts will be vigilant to strike down previous convictions that are tainted with reversible error." (Page 121 of 383 U.S., page 777 of 86 S. Ct.)

Even if we were to accept defendant's argument that the information charging him with a violation of section 718.2 accuses him of the same offense as the information charging a violation of section 713.3 (which we do not do), there would be no double jeopardy under the circumstances existing here. As we pointed out in State v. Gebhart, supra, section 795.5, Code, 1966, specifically permits a second prosecution after dismissal of a pending criminal charge if the offense is a felony.

Defendant alleges, too, that this second charge against him was filed by the county attorney to punish him for having successfully challenged the original sentence by his habeas corpus action or to circumvent the provisions of section 795.2, Code, 1966, guaranteeing defendant a speedy trial.

█ We agree the county attorney should not use the considerable powers of his office to punish a defendant who avails himself of any procedural right he has, nor should he use it for vindictive purposes. However, there is nothing in the record to suggest that he did so except defendant's unsupported claim to that effect. We assume the regularity of official acts in the absence of a showing to the contrary. Sewell v. Lainson, 244 Iowa 555, 560, 57 N.W.2d 556; State v. Bastedo, 253 Iowa 103, 110, 111 N.W.2d 255; State v. Meyers, 256 Iowa 801, 803, 129 N.W.2d 88.

 Once the original plea and sentence under section 713.3 had been set aside upon defendant's petition for habeas

corpus, defendant was restored to his previous status as one accused, but not convicted, of a crime. It was then as though no plea had ever been entered. He is entitled to that but to no more. By setting aside his former plea and sentence as having been void, defendant cannot improve his lot. If there had been no prior proceedings, the county attorney in the proper exercise of his discretion could have dismissed the pending charge under section 795.5, Code, 1966, and could have then filed a new charge, either alleging the same violation or accusing defendant of any other offense justified by the evidence available.

 If the county attorney could have done that then, why should he be precluded from doing it now? We reiterate that such power and discretion may not be exercised to harass a defendant nor to subject him to repeated and unwarranted prosecution. However, as we said in State v. Bastedo, supra, at page 110 of 253 Iowa Reports, "We know of no rule or statute, and none was cited to us, that would require a State's attorney to file all or any charges that may lie as a result of a given offense, at the time one is chosen. Such a requirement would indeed hamper law-enforcement efforts of the authorities and be most unreasonable."

This matter was submitted to the trial court on motion prior to trial and the court found nothing improper in the State's action herein described. We agree with that conclusion.

We have no hesitancy in concluding that defendant was not subjected to double jeopardy under the circumstances existing here.

III. Defendant also contends he was deprived of a speedy trial, which is not only guaranteed to him by the provisions of section 795.2, Code of Iowa, but is also constitutionally required both by Amendment 6 to the Constitution of the United States and section 10 of Article I of the Constitution of Iowa.

Defendant's objection obviously is directed against the State's failure to try him for violation of section 713.3, Code, 1966. However, that charge was dismissed, although not upon defendant's motion under section 795.2.

Defendant was only tried on one charge, a violation of section 718.2.

■ If the State was justified in dismissing the original information and in filing a new one, and we have already held it was, then defendant was brought to trial well within the period of limitation provided for in section 795.2, and we find no merit in his claim that he was denied a speedy trial.

IV. We now consider defendant's complaints arising out of the trial itself. Defendant combines in one assignment the claim that his constitutional rights were violated by permitting the introduction of evidence obtained by unreasonable search and seizure; that certain statements, admissions and writings obtained without first giving him the Miranda warning were wrongfully admitted; and, that he was not promptly arraigned.

When defendant refers to evidence obtained by unreasonable search and seizure, he is apparently talking about the check upon which this prosecution is based and a credit card issued to W. C. Tully, by which name defendant falsely identified himself both to the attendant at the service station and to the officer. The trial court found both were admissible, and we agree.

■ There can be little question about the credit card, which was voluntarily delivered to the arresting officer by defendant when he was asked for identification. Nor can there be any serious dispute about the circumstances under which the officer took possession of the check. The record amply supports the trial court's finding that the check, once it had been given to the attendant at Hanson's Mobilgas Service. Station, never again came into defendant's hands. The trial court found it was delivered by Mr. Hanson to the officer. Under the facts disclosed and under the findings of the trial court on the motion to suppress, there was no search, either reasonable or unreasonable, conducted by the officer.

In view of this conclusion it is unnecessary for us to consider defendant's claim that he was arrested without probable cause, since his objection goes only to the question of unreasonable search and seizure. Otherwise the circumstances of the arrest are immaterial to this appeal.

Defendant claims error in the admission of a certain oral statement he made during his interrogation by one of the

officers; and in the admission also of certain handwriting exemplars which he had been compelled to submit for comparison purposes. He says that this interrogation took place and the handwriting exemplars were furnished without his first having been warned that he could remain silent; that he was entitled to an attorney; that an attorney would be appointed for him if he could not afford one; and that whatever he said would be used against him. These are the Miranda warnings as first set out in Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed.2d 694. Under the Miranda decision defendant was entitled to those warnings and any statement obtained from him in violation thereof would be inadmissible.

After a hearing on defendant's motion to suppress, the trial court found that the warnings had been given. Defendant denies this. Ordinarily when there is a claim of denial of constitutional rights we will accept and give effect to the trial court's determination of disputed facts if there is substantial evidence to support the trial court's finding. State v. Brant, 260 Iowa 758, 764, 150 N.W.2d 621, 625; State v. Gates, 260 Iowa 772, 775, 150 N.W.2d 617, 619, and citations. We find such substantial evidence here.

What we have already said would permit the admission of the disputed evidence, but we mention too that the only statement admitted into evidence was that testified to by Officer Flora in which defendant acknowledged he had cashed the check. If we were to hold this error, it would probably be without prejudice since defendant, as part of his cross-examination of Officer Flora, offered and had admitted defendant's written statement in which he made the same admission. We recognize defendant had good reason for seeking the admission of this exhibit, but nevertheless he cannot ask its benefits while at the same time attempt to avoid whatever disadvantages might be involved.

As to defendant's objection to the use of handwriting samples, we agree with the trial court that they were properly admissible. The constitutional safeguards upon which defendant relies do not extend to nontestimonial evidence. The privilege against self-incrimination, both under federal and state rules, is limited to evidence by *communication* in whatever

form that communication might take. It does not protect a defendant, by the taking of blood or other bodily fluid, by the use of fingerprints, or by the showing some physical trait or characteristic, from becoming the source of real or physical evidence against himself. Schmerber v. California, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed.2d 908. This rule was applied to voice identification in a lineup in United States v. Wade, 388 U. S. 218, 87 S. Ct. 1926, 18 L. Ed.2d 1149. It was also applied to handwriting exemplars in Gilbert v. California, 388 U.S. 263, 87 S. Ct. 1951, 18 L. Ed.2d 1178.

 We find no merit either in defendant's assertion that he was not promptly arraigned. He was arrested on the evening of May 23, 1966. He was arraigned at approximately 1:30 p.m. on May 24, 1966. Defendant says it was somewhat later than that, but in any event it was that same afternoon. Defendant further claims that he should have been arraigned in the morning, and that his arraignment was postponed in order to allow the police to make some further investigation to secure evidence against him. There is nothing in the record to justify this conclusion. We find there was no undue delay in defendant's arraignment under the circumstances existing here.

 V. Defendant also seeks reversal on the ground the State failed to prove one of the essential elements of the crime with which he was charged. He argues that one cannot utter a forged instrument unless it is shown the instrument itself is actually a forgery. This, he says, the State failed to do.

In this assignment defendant relies upon a statement made by the trial court to counsel before trial that the State would be required to prove defendant had no arrangement with the bank for payment of the check. The lack of such an arrangement is an essential element of the offense defined in section 713.3, but it is not an element of the offense for which defendant was tried. We do not construe the trial court's remark the same as defendant does; but, if we did, it would still afford no basis for reversal. The issues were correctly presented to the jury by proper instructions and defendant's counsel certainly knew what the elements of the offense were, regardless of what might have been said in a pretrial discussion. Defendant shows no prejudice by this remark. There is nothing to this claim.

■■ We find there was ample evidence on all elements of the offense to submit the case to the jury. Defendant identified himself by a false name both at the time he cashed the check and later. He had identification for the person whose identity he assumed. He used a check imprinted with identification numbers different from those of the drawee bank. Defendant falsely pretended to know both Mr. Hanson and his wife in order to induce the attendant to cash the check. There was evidence he actually wrote the check in question, using the name of W. C. Tully.

We find there was sufficient evidence to take this case to the jury.

■■ VI. On March 27, 1967, the day defendant's trial started, the Nevada Journal,. a newspaper published at the place of trial, carried the following news story concerning the selection of a jury:

"Jury Selection Is Underway Today In Ed Sefcheck Case

"Selection of a jury to retry the case of Edward Sefcheck, 44, on a charge of uttering a forged instrument was begun Monday morning in district court, beginning the jury trial portion of the March term.

Selfcheck, who hails from Pennsylvania, was brought back to Story County from Fort Madison for the new trial recently when the Supreme court ruled that Sefcheck had not been given a fair trial last June when he pleaded guilty to a false check charge and was sentenced to seven years at the Fort Madison penitentiary.

Selfcheck appealed the case on the grounds that no record was made of whether he had personally pleaded guilty at first trial. Milton Seiser was appointed by the court as the county-expense lawyer.

The charge of uttering a forged instrument carries a maximum sentence of 10 years. The sentence he is appealing on the false check charge is seven years."

. Defendant contends this story was so prejudicial it deprived him of a fair trial.

It is unnecessary for us to discuss the well-debated question of fair trial—free press. Each is based upon a constitutional

right of equal dignity. The right to a fair trial is guaranteed by Amendment 6 to the.Constitution of the United States and Amendment 1 proscribes any interference with freedom of the press. From time to time these two come into conflict, either apparent or real.

The job of the courts is to maintain a reasonable balance between the two so that each may be protected without infringement upon the basic principles of the other. Difficulty arises perhaps because the proponents of each ascribe to one or the other an absolutism which does not and cannot exist. See 17 Drake Law Review, page 1, "A Constitutional Balance Between Fair Trials and Free Press."

Under the circumstances existing here we find the article in question did not interfere with defendant's right to a fair. trial. He .complains the story contained some misstatements and we agree. However, defendant has no constitutional right to factual accuracy. The question is whether the story was so prejudicial that it deprived him of a fair trial. We hold it was not. In Mares v. United States of America, 10 Cir., 383 F.2d 805, 808, it was held that each case relating to a claim of jury prejudice because of newspaper articles appearing during a trial must turn on its special facts. In that case, too, with reference to these apparently conflicting constitutional rights the court had this to say, "The problem presented is incapable of a satisfactory solution. Media of publicity have the right to report what happens in open court. An accused has a right to a trial by an impartial jury on evidence which is legally admissible. The public has a right to demand and expect 'fair trials designed to end in just judgments.' *These rights must be accommodated in the best possible manner.*" (Emphasis added.)

 We agree that each case must stand on its own facts. Prejudice should not be presumed from the mere publication of a news article during trial. Here no prejudice is proved although defendant claims it existed. It is not shown that any juror read the article. The court was careful throughout the trial to admonish the jury not to read any newspaper articles concerning the case. There is nothing to indicate this admonition was disregarded. The story itself is not inflammatory. nor is it the type to necessarily cause prejudice, even if read.

■ ▆▆▆▆ We mention, too, that defendant did not call this matter to the trial court's attention until after the trial when it was included as a ground for a new trial. "As suggested in the Mares case, from which quotation has already been made, if a claimed prejudicial error is brought to the trial court's attention immediately upon its appearance, proper steps may then be taken to determine if harm has resulted and to act accordingly to protect a defendant in those instances when prejudice exists.

Having failed to follow that course here, defendant now asks that we *presume* prejudice because of his inability to *show* prejudice. There may, of course, be situations in which the very publication of an article may justify an inference of prejudice. Such circumstances are not shown here. We discussed this matter to some extent in State v. Clough, 259 Iowa 1351, 1361, 147 N.W.2d 847, 853.

We find no reversible error in the trial court's ruling on this matter.

We have considered the whole record and all of defendant's claimed errors, particularly with reference to his contention that his rights under the Constitution of the United States have been violated as to Amendments 4 (unreasonable search and seizure), 5 (privilege against self-incrimination and double jeopardy), 6 (speedy and impartial trial), and 14 (due process of law). We find no basis for reversal. Defendant was vigorously and diligently defended. The evidence was amply sufficient to justify the jury's verdict.

VII. We feel impelled to make one more comment. Defendant has spent nine months in the penitentiary on a sentence which was ultimately set aside because of procedural imperfections having nothing to do with his guilt or innocence. While how long defendant should serve is not within our control, we recommend the Board of Parole take this into account when in due time defendant's file comes up for parole consideration.

The judgment of the trial court is affirmed.—Affirmed.

All JUSTICES concur except RAWLINGS and BECKER, JJ., who dissent to Division VII.

RAWLINGS, J.—I am unable to agree with the "comment" in Division VII of the majority opinion relative to time spent in confinement by defendant with regard to the void judgment originally entered, and respectfully dissent.

I. I agree with the conclusion reached by the majority to the effect this defendant has not been subjected to double jeopardy. Since the initial judgment of conviction under section 713.3, Code, 1966, must be deemed null and void, defendant has actually been placed in jeopardy only once. See 2 Underhill's Criminal Evidence, Fifth Ed., section 480, page 1168.

On the other hand, while the majority discusses and resolves the "double jeopardy" issue, it does not fully reach the matter of "double punishment", here unavoidably involved. In this respect the record discloses defendant was incarcerated at least nine months in connection with the void judgment for which no credit was allowed him under the sentence imposed on the subsequent forgery charge. And the token recognition of the matter by a recommendation the Board of Parole take it into account when in due time defendant's file comes up for parole consideration is totally insufficient. Stated otherwise, it appears to me the cursory treatment accorded by the majority to the matter of double punishment is constitutionally inadequate.

Touching on the subject at hand chapter 422, Acts of the Sixty-second General Assembly, amends chapter 791, Code, 1966, by adding thereto the following: "Whenever any person who has been confined to jail at any time prior to sentencing because of failure to furnish bail, is sentenced to the county jail, the court shall backdate the execution of judgment or mittimus a sufficient number of days to give such person credit upon any sentence imposed for the time already spent in jail."

By the same legislative Act, Code section 246.38 was amended by striking the period in line eleven of that section and inserting in lieu thereof the following: " ; provided, however, if a convict had been confined to a county jail or other correctional or mental institution at any time prior to sentencing, or after sentencing but prior to his case having been decided on appeal, because of failure to furnish bail or because of being charged with a nonbailable offense, he shall be given credit for such days

already served in jail upon the term of his sentence. The clerk of the district court of the county from which the convict was sentenced, shall certify to the warden the number of days so served."

Admittedly these amendments do not go directly to the factual situation presented in the instant case. On the other hand they do demonstrate awareness on the part of the legislature of the problem here presented. Stated otherwise, it is now clear the declared public policy of the State of Iowa is to avoid the anathema of double punishment.

Dealing with this matter, 24B C.J.S., Criminal Law, section 1990, page 603, states: "The constitutional principle that no one shall be put in jeopardy twice for the same offense, * * * is broad enough to mean that no one can lawfully be punished twice for the same offense; the one follows from the other, and the constitutional provisions are designed to protect accused from a double punishment as much as to protect him from two trials."

From the foregoing it appears to me the majority approaches, if it does not reach, a conclusion violative of Amendment 5 to the United States Constitution.

Surely it is our function to recognize such important questions and not leave them to the discretion of the Board of Parole which may or may not accord recognition to any judicial recommendations.

I respectfully submit the trial judge, in sentencing defendant on the forgery charge, had not only the authority but was constitutionally required, notwithstanding our indeterminate sentence law, to accord defendant credit for time confined in lieu of bail prior to sentencing under the voided judgment, plus total time incarcerated pursuant to original sentence imposed, with full credit for earned good behavior, if any, while so incarcerated. In support hereof see Short v. United States, 120 U.S. App. D.C. 165, 344 F.2d 550, 553, and Rice v. Simpson, 274 F.Supp. 116, 119–123.

I would reverse and remand for entry or correction of judgement in accord with the views expressed above.

BECKER, J., joins in this dissent.