William Lee **MILLER**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

No. 18876.

United States Court of Appeals
Eighth Circuit.

June 4, 1968.

Rehearing Denied June 27, 1968.

Ellis Olkon, Minneapolis, Minn., for appellant.

Floyd E. Boline, Asst. U. S. Atty., Minneapolis, Minn., for appellee; Patrick J. Foley, U. S. Atty., on the brief.

Before MATTHES, GIBSON and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

The defendant appeals from a conviction of conspiring to transport marihuana from one state to another in violation of Title 26, U.S.C., § 4755(b). He contends that an oral and a written confession were improperly received in evidence because: (1) he was not advised of his "Miranda" rights before the interrogatory process began, thus subsequent "Miranda" warnings were ineffective, his educational and cultural background was such that he was unable to comprehend the "Miranda" warnings when and as given, and the confessions were induced by false promises of release; (2) a second "Miranda" warning ought to have been given; and (3) the oral and the written confessions were the product of an unnecessary delay in arraignment.

The defendant moved before trial to suppress the confessions. An evidentiary hearing on the motion was held by Judge Larson, who found that the defendant had been given all required warnings and had knowingly voluntarily waived his rights. He concluded that neither the "Miranda" rule nor "the rules of criminal procedure" had been violated.

The issue of voluntariness of the defendant's confession was also submitted, without objection, to the jury.

The defendant was indicted by a United States Grand Jury at Minneapolis, Minnesota, on January 30, 1967. A warrant for his arrest, pursuant to the indictment, was issued and sent to the federal narcotics agents in Chicago, Illinois. It was executed on February 10, 1967. The arresting officers (narcotics agents and Waukegan police) went to the house where the defendant was living in Waukegan, Illinois. They arrived at about 10:45 A.M. They were shown to the defendant's room by the owner. They immediately informed the defendant that he was under arrest but did not advise him of his "Miranda" rights. They searched the room for about five minutes. During the course of the search, the defendant asked the searching officers what they were looking for. They replied, "Narcotics." He denied that he had any in his room.

The searching officers then asked who occupied the room with him. He stated that "C.D." (identified as a contact man in the purchase of the narcotics) occupied the room with him the preceding evening. No testimony as to the above

conversations were offered by the government at the motion to suppress or at trial. The arresting federal narcotics agent, however, testified at trial to the inculpatory statements on cross-examination. He was asked "who did the defendant occupy the room with." He replied:

"He stated that morning when I arrested him that he occupied it with C.D. [identified in other testimony as a contact man between the defendant and other co-conspirators] but prior to that time he had lived alone."

The defendant did not move to strike this answer.

The defendant was taken directly from his room to the Waukegan Police Headquarters, arriving there at about 11:10 A.M. The arresting officers testified that a typewritten "Miranda" warning and waiver, whose sufficiency is not challenged,[1] was read to the defendant before he was questioned and that he was asked whether or not he understood its contents. He replied that he did and that he desired to waive his rights. He then appeared to read and sign it. (The defendant admitted that the signature on the waiver was his but stated he had not signed it until after he was brought to Chicago, and that he did not then understand its significance. He stated that he could not read and that he could only write his name. He denied that he had been otherwise advised of his rights at the Waukegan Police Headquarters or that he had knowingly waived them.)

The arresting officers then questioned the defendant. He promptly admitted that he had participated in arranging the purchase of the narcotics, but stated that he had not made any money on the transaction, that he had just made an introduction—"Somebody wanted something and I introduced them to somebody who had it. [C.D.—Charles D. Griffin] I'm not involved other than that." (The defendant denied making this or any other inculpatory statement at the Waukegan Police Headquarters.)

The arresting officers discontinued the interrogation for approximately one-half hour while one of the officers went to the North Chicago Police Station to obtain a photograph of "C.D." He was gone for approximately twenty-five minutes. When he returned, the defendant identified the picture of Charles D. Griffin as being "C.D."

The defendant was retained at the Waukegan Police Headquarters until ap-

---

1. The first paragraph of the statement given by the defendant provided:

"I, William Lee MILLER make the following statement after having been advised by Narcotic Agent Raebel that, in accordance with the provisions of the Fifth Amendment of the Constitution of the United States, I may remain silent and that I do not have to make any statement. I understand that any statement made by me, may be used against me in any subsequent trial or judicial proceeding. I was further advised that I have the privilege to request the assistance of a counsel of my choice. Being fully aware of my rights and having chosen not to request the presence of a counsel, I make the following statement of my own free will, without any threats having been been made against me or any promises extended to me."

Compare this warning with the standard F.B.I. warning as set out in *Miranda*:

"The standard warning long given by Special Agents of the FBI to both suspects and persons under arrest is that the person has a right to say nothing and a right to counsel, and that any statement he does make may be used against him in court. * * *"

Miranda v. State of Arizona, 384 U.S. 436, 484, 86 S.Ct. 1602, 1633, 16 L.Ed.2d 694 (1966).

In comparing the two statements, consider also Mr. Justice Clark's comment: "* * * So phrased, this [F.B.I.] warning does not indicate that the agent will secure counsel. Rather, the statement may well be interpreted by the suspect to mean that the burden is placed upon himself and that he may have counsel appointed only when brought before the judge or at trial—but not at custodial interrogation. As I view the FBI practice, it is not as broad as the one laid down today by the Court."

Id. at 501 n. 3, 86 S.Ct. at 1642.

proximately 12:45 P.M., when he was taken by a federal narcotics agent to Chicago, a distance of approximately forty-five miles. Upon arrival at the Federal Narcotics Office in Chicago, the defendant was fingerprinted, photographed and asked about his personal history. He was then questioned for an additional one-half hour. His oral statements, repeating much of what he said in Waukegan, were reduced to writing and he signed a two-page confession between 2:30 and 2:45 P.M. The agents, who took the defendant's statement, testified that they read the statement out loud to him prior to the signing and that the defendant appeared to reread the statement when they gave it to him for his signature. The first paragraph of the signed statement repeated the earlier "Miranda" warning, with one exception —it failed to advise the defendant that free counsel would be furnished to him on request.

We turn to a consideration of the defendant's contentions.

(1) *"Miranda" warnings were given; they were timely and were understood by the defendant. The confessions, which followed the warnings, were voluntarily made and not induced by false promises of release.*

The District Court held a full evidentiary hearing on the defendant's motion to suppress the confessions. As a result of this hearing, it made the findings indicated above. After a careful review of the record, we are convinced that the government sustained its burden of proving that the warnings were given and understood, and that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retain appointed counsel. Miranda v. State of Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Escobedo v. State of Illinois, 378 U.S. 478, 490, 84 S.Ct. 1758, 12 L.Ed. 2d 977 (1964); Evans v. United States 375 F.2d 355 (8th Cir. 1967), rev'd and remanded on other grounds, Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (May 20, 1968);

Nedrud, The Criminal Law, B–99 (1967); 79 Harv.L.Rev. 935, 1069 (1965). See, Wakaksan v. United States, 367 F.2d 639 (8th Cir. 1966), cert. denied 386 U.S. 994, 87 S.Ct. 1312, 18 L.Ed.2d 341 (1967); Miller v. United States, 354 F.2d 801 (8th Cir. 1966).

■ The conversations which took place in the defendant's room, before he was given the "Miranda" warning, were not such as to taint or invalidate the oral or written confessions subsequently given, nor was evidence as to these conversations offered by the government. They were brought out on defendant's cross-examination of a government witness. The defendant made no motion to strike the answer which he now finds offensive.

■ As we have indicated, the burden of establishing that the defendant, a thirty-five year old Negro with a third or fourth grade education and a limited capacity to read or write, knowingly and intelligently waived his privilege against self-incrimination and his right to counsel was on the government and was a heavy one. Nonetheless, we believe that the trial court correctly determined the issue. It had an opportunity to observe the defendant and was in a position to form a judgment as to his ability to comprehend. The hearing on the motion to suppress was thorough, and the defendant was given every opportunity to present evidence.

In addition, the court submitted the issue of voluntariness of the defendant's confession to the jury, and no objections to the instructions under which this issue was submitted were taken. Evans v. United States, 325 F.2d 596 (8th Cir. 1963), cert. denied 377 U.S. 968, 84 S.Ct. 1649, 12 L.Ed.2d 738 (1964). Cf., Tucker v. United States, 375 F.2d 363, 367–68 (8th Cir.), cert. denied 389 U.S. 888, 88 S.Ct. 128, 19 L.Ed.2d 189 (1967).

(2) *Under the circumstances of this case, it was not necessary that a second "Miranda" warning be given.*

■ It is the substance of the defendant's contention that a second "Miranda" warning ought to have been given before

the questioning of the defendant was resumed in Chicago, and prior to the time that his oral statements were reduced in writing. The defendant reads *Miranda* as requiring that the full warning be given each time the interrogation process is renewed. This is not the first time this contention has been made before this Court. A similar one was made in Tucker v. United States, 375 F.2d at 365–366. In that case, this Court affirmed the defendant's conviction on a finding that the defendant had been warned of all of his "Miranda" rights at the outset of the interrogation process. The implicit holding in *Tucker* was that a confession is not necessarily invalid because the "Miranda" warning is not repeated in full each time the interrogation process is resumed after an interruption.

It is difficult to lay down a rule of general application, and we will not attempt to do so here. In each case, the ultimate question is: Did the defendant, with a full knowledge of his legal rights, knowingly and intentionally relinquish them?

■ The circumstances here are such that we believe the trial court was justified in answering these questions affirmatively. The defendant was given a full "Miranda" warning, in Waukegan, at 11:10 A.M. He signed a written statement between 2:30 and 2:45 P.M. The written statement was prepared by the same officers who conducted the original oral interrogation, and the substance of the two statements were the same.

(3) *The oral and written statements were not the product of an unnecessary delay in arraignment.*

The most troublesome issue is the defendant's contention that the confessions were the product of a delay in arraignment and, thus, violative of Rule 5(a) of the Federal Rules of Criminal Procedure, 18 U.S.C., and the McNabb-Mallory Rule. See, 68 YALE L.J. 1003 (1958).

■ At the outset, we note that Rule 5(a) is not applicable here as the warrant for the defendant's arrest was issued pursuant to an indictment and Rule 5(a) applies only where an arrest is made pursuant to a warrant issued on a complaint or an arrest without a warrant. See, Masters v. Eide, 353 F.2d 517 (8th Cir. 1965). Rule 40(b) of the Federal Rules of Criminal Procedure, 18 U.S.C., does apply, however. This rule is similar to Rule 5(a) in that it requires that "a person * * * arrested upon a warrant [even though based on an indictment] issued in another state at a place 100 miles or more from the place of arrest * * * shall be taken without unnecessary delay before the nearest available commissioner or to a nearby judge of the United States in the district in which the arrest was made." The rule further provides:

"The commissioner or judge shall inform the defendant of the charge against him, of his right to retain counsel, of his right to request the assignment of counsel if he is unable to obtain counsel, and of his right to have a hearing or to waive a hearing by signing a waiver before the commissioner or judge. The commissioner or judge shall also inform the defendant that he is not required to make a statement and that any statement made by him may be used against him, shall allow him reasonable opportunity to consult counsel and shall admit him to bail as provided in these rules."

■ In the light of the similarity of the two rules, the McNabb-Mallory doctrine prohibits the receipt in evidence of a statement obtained in violation of Rule 40(b) to the same extent as if Rule 5(a) had been violated. Cf., United States v. Schwartz, 372 F.2d 678, 681 (4th Cir. 1967).[2] The burden of showing unreasonableness rests on the defendant. Tillotson v. United States, 97 U.S.App.D.C.

2. The Court properly notes that if prosecution of a warrant of removal is by indictment, the indictment itself serves as conclusive proof of probable cause; while if a prosecution is by information or complaint, probable cause must be proven. Barron Federal Practice and Procedure, § 2384. While this difference exists, it is of no significance in regard to the application of the McNab-Mallory rule.

402, 231 F.2d 736, 738 (see cases cited therein), cert. denied 351 U.S. 989, 76 S.Ct. 1055, 100 L.Ed. 1502 (1956); 79 Harv.L.Rev. 935, 1070 (1965).

The doctrine is somewhat difficult of application here, particularly in the light of the language in *Mallory* that a defendant "is not to be taken to police headquarters in order to carry out a process of inquiry that lends itself, even if not so designed, to eliciting damaging statements to support arrest and ultimately his guilt," and in light of the fact that the questioning seems to have been among the reasons for bringing the defendant to the Waukegan Police Headquarters. (He was not fingerprinted, photographed or booked there. The only reason other than questioning, for which he was brought there, would be to arrange his transportation to Chicago.)

If the *Mallory* language is taken literally, it would arguably require that the statement given at the Waukegan Police Headquarters be suppressed. This, in turn, would require that the subsequent Chicago statement be suppressed as the "Miranda" warning given there was insufficient. Despite the literal language, however, if United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140 (1944), is still good law, the statements were admissible as the facts in *Mitchell* closely parallel those here. Compare, Gross v. United States, 393 F.2d 667 (D.C. Cir. Nov. 16, 1967); Ginoza v. United States, 279 F.2d 616 (9th Cir. 1960); Watson v. United States, 101 U.S. App.D.C. 350, 249 F.2d 106, 109 (1957).

In *Mitchell*, the defendant was taken into custody at his home at seven o'clock in the evening and driven by two police officers to the precinct station. Within a few minutes after his arrival at the station, he admitted his guilt. Mr. Justice Frankfurter, speaking for the Court in *Mitchell*, stated that it was adhering to *McNabb*:

"But the foundations for application of the McNabb doctrine are here totally lacking. * * * [U]nder the prevailing American criminal procedures as pointed out in the *McNabb* case, 'The mere fact that a confession was made while in the custody of the police does not render it inadmissible.' * * * Under the circumstances of this case, the trial courts were quite right in admitting, for the juries' judgment, the testimony relating to Mitchell's oral confessions * * *."

322 U.S. at 69, 64 S.Ct. at 898.

The circumstances appear to have been a "prompt acknowledgment of guilt" and "spontaneous cooperation by the defendant."

That *Mitchell* has life is indicated by the Justice who authored *McNabb*, *Mitchell* and *Mallory*. Speaking in Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961), Mr. Justice Frankfurter stated:

"In *McNabb*, our decision turned on the failure of the arresting officers to comply with procedures prescribed by federal statutes then in effect requiring prompt production of persons arrested for preliminary examination. Compare Anderson v. United States, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829. The *Upshaw* Case and Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479, carried the same exclusionary rule over in implementation of Fed.Rules Crim. Proc. 5(a). Of course, our decision in United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140, makes clear that confessions made during the period immediately following arrest and before delay becomes unlawful are not to be excluded under the rule."

Id., 367 U.S. at 599 n. 50, 81 S.Ct. at 1877.

*Mitchell's* vitality has also been indicated by this Court, Bright v. United States, 274 F.2d 696, 697 (8th Cir. 1960), and other post-*Mallory* decisions in the various Circuits: Alston v. United States, 121 U.S.App.D.C. 66, 348 F.2d 72, 74 (1965); Walton v. United States, 334 F.2d 343, 346 (10th Cir. 1964); Bailey v. United States, 117 U.S.App.D.C. 241, 328 F.2d 542, 545, cert. denied 377 U.S. 972, 84 S.Ct. 1655, 12 L.Ed.2d 741

(1964); Muldrow v. United States, 281 F.2d 903, 906 (9th Cir. 1960). See, 79 Harv.L.Rev. 935, 990 (1965).

■ The circumstances deemed important in *Mitchell* were present here. The defendant was brought to the police station within a few minutes after his arrest and was questioned immediately upon his arrival. On being asked about his involvement in the transfer of narcotics, the defendant promptly—and in a spirit of cooperation—told his questioners that he had assisted in arranging the transfer but that he had received no money for the part he played. While he may have mistakenly felt that lack of consideration to him would relieve him of responsibility of his actions,[3] his answer was, nonetheless, promptly given. We cannot believe that it was the product of an unnecessarily delayed arraignment.

For the reasons stated in *Evans*, the written statement given in Chicago, which substantially repeated the earlier Waukegan statement, was also admissible.

Three post-*Mallory* cases considered by this Court also suggest that the defendant's statements were properly received in evidence: Evans v. United States, supra; Feguer v. United States, 302 F.2d 214 (8th Cir.), cert. denied 371 U.S. 872, 83 S.Ct. 123, 9 L.Ed.2d 110 (1962); Holt v. United States, 280 F.2d 273 (8th Cir. 1960), cert. denied 365 U.S. 838, 81 S.Ct. 750, 5 L.Ed.2d 747 (1961).

In *Evans*, the defendant confessed to a state law enforcement officer at the time of his arrest. He repeated the confession to an F.B.I. agent three hours later, after he had been placed in custody. This Court supported the admission of the first confession on the grounds that it was entirely voluntary in nature, and the second on the grounds that it was primarily repetitious of the first and was also voluntarily given.

In *Feguer*, the defendant was arrested at 2:00 P.M. and made inculpatory statements about 3:30 P.M., at a time when the police were questioning him and were making an effort to verify his story. The Court justified the admissions of these statements on the grounds of specific exceptions set forth in *Mallory* that a delay between arrest and arraignment may be justified where a story, volunteered by the accused, is susceptible to quick verification of the accused through third parties.

In *Holt*, the defendant was arrested at 1:30 P.M. He initially denied his guilt, but subsequently admitted it after being questioned for approximately one-half hour, between four and five o'clock on the date of his arrest. This Court justified the admission of the defendant's statement on the ground that it was impossible to arraign the defendant before five o'clock, and on a further ground that the evidence indicated that the statement had been a voluntary one.

Affirmed.

---

3. As indicated in *Miranda*, many statements intended to be exculpatory are, in fact, inculpatory:

"* * * No distinction can be drawn between statements which are direct confessions and statements which amount to 'admissions' of part or all of an offense. The privilege against self-incrimination protects the individual from being compelled to incriminate himself in any manner; it does not distinguish degrees of incrimination. Similarly, for precisely the same reason, no distinction may be drawn between inculpatory statements and statements alleged to be merely 'exculpatory.' If a statement made were in fact truly exculpatory it would, of course, never be used by the prosecution. In fact, statements merely intended to be exculpatory by the defendant are often used to impeach his testimony at trial or to demonstrate untruths in the statement given under interrogation and thus to prove guilt by implication. These statements are incriminating in any meaningful sense of the word and may not be used without the full warnings and effective waiver required for any other statement. In *Escobedo* itself, the defendant fully intended his accusation of another as the slayer to be exculpatory as to himself." Miranda v. State of Arizona, supra, 384 U.S. at 476–477, 86 S.Ct. at 1629.