**STATE of Iowa, Appellee,**

v.

**James COOPER, Appellant.**

**No. 56155.**

Supreme Court of Iowa.

April 24, 1974.

Herman W. Walter, of Council Bluffs, for appellant.

Richard C. Turner, Atty. Gen., Dennis E. Jontz, Asst. Atty. Gen., Lyle Rodenburg, Co. Atty., Bruce Cornell, Asst. Co. Atty., for appellee.

Submitted to MOORE, C. J., and MASON, REES, UHLENHOPP, and HARRIS, JJ.

MASON, Justice.

James Cooper appeals from judgment and sentence based on a jury verdict convicting him of murder in the second degree.

Following a preliminary hearing in which defendant was charged with murder probable cause was found and defendant was bound over to the grand jury. A county attorney's information filed September 29, 1972, charged Cooper did willfully, deliberately and premeditatedly with malice aforethought kill Louise Limerick on May 29, 1972, in violation of section 690.2, The Code, 1971.

Trial commenced December 7. The guilty verdict was returned December 14.

The incident giving rise to defendant's arrest on the murder charge occurred in Council Bluffs. Cooper, age 49, was residing in the home of Mrs. Limerick. On May 29, he had begun drinking at home at about 7 a.m.; later in the morning and in the early afternoon defendant had additional drinks at local bars. By 1:30 p.m. he was intoxicated and was helped to his residence and into his bed by a drinking companion. Defendant suffered from alcoholism and also had been a patient at various mental health institutions on many occasions. At approximately 3:30 p.m. a shooting occurred in the Limerick home. The evidence was conflicting in part but essentially it appears defendant, hearing a noise and seeing someone, believed it to be one John Fedor, whom defendant said he wanted dead. Defendant fired his rifle and fatally wounded Mrs. Limerick. Cooper called the Council Bluffs police station and stated he had shot Louise.

The record discloses the call was received at 3:05 p.m. Shortly thereafter Detective Zimmerman and several other police officers arrived at the Limerick home moments apart. Officers Hempel and Major arrived first and entered the house through the front door. Cooper was in the living room at the time. He told the officers, "She's in here," and started walking through a dining area into the kitchen. Hempel first observed a .22 caliber rifle on a table in the center of the room. Mrs. Limerick was on the floor behind the table. Hempel had no further conversation with Cooper at that time.

Zimmerman and Detective Peterson entered the home through the rear entrance leading to the kitchen. Zimmerman saw defendant standing against one of the kitchen walls with one of the police investigators and observed Mrs. Limerick lying on the kitchen floor with a gun shot wound above her right ear. Zimmerman was acquainted with both Cooper and Mrs. Limerick. When Zimmerman asked the investigators what the circumstances were Cooper said "I shot her." Although her condition was critical Mrs. Limerick was still alive when the detective directed Hempel to take charge of Mr. Cooper and take him to the police station.

Zimmerman had no further conversation with Cooper before he was taken to the station. The detective and some other police officers remained to assist the ambulance crew in getting Mrs. Limerick on a cot and into the ambulance for a trip to the hospital. The house was secured and the police proceeded with the investigation.

At trial Hempel testified Cooper was not interrogated in any way on the trip to the police station in the patrol car. He detailed the matters he included in warning Cooper of his constitutional rights to counsel guaranteed by amendment 6 and his constitutionally protected privilege against self-incrimination under amendment 5 of the federal constitution in the manner enunciated in Miranda v. Arizona, 384 U. S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974.

When the officer asked Cooper if he understood the rights he replied his name only. Although neither officer asked Cooper any questions defendant said he had shot Louise and he didn't know why. He also told the officers they had no idea of what the tension had been for the last six months. Nothing further was said and no further questions were asked. Hempel had no further contact with Cooper.

Richter, the assistant Pottawattamie county attorney who did not participate in the prosecution of the State's case, talked to Cooper the first time in the juvenile office at the police station between 6:30 and 7 p.m. May 29. He was casually acquainted with Cooper before the incident. Don Clark, a police officer, was also present. Richter testified that before the conversation started he advised Cooper of his constitutional rights under amendments 5 and 6 of the federal constitution. He then detailed the matters he included in warning Cooper of these constitutional rights. The witness also said that when he asked Cooper if he understood his rights Cooper replied he did and that another officer had told him the same thing. Richter then proceeded to question Cooper about the events of the entire day of May 29 leading up to the shooting of Mrs. Limerick.

Richter testified Cooper told him he had been lying in bed and observed a gray head through what would be the kitchen door which leads into the bedroom and thought the person was John Fedor with whom he had had some problems over two chain saws taken from Mrs. Limerick. Cooper told Richter he grabbed the gun and fired one shot from his bed.

After the conversation with Cooper Richter returned to the Limerick home to see if what Cooper had told him was possible. After this investigation Richter next talked to Cooper May 31 between 6:30 and 7:30

p.m. in the presence of Detective Zimmerman in the jail cell area of the police station.

Richter testified Cooper on this occasion volunteered that some of the things he had related to Richter on the 29th were not exactly the way it happened. Cooper then made some changes saying he had not shot Mrs. Limerick from the bed or through the doorway as he previously claimed but had gotten out of bed, went into the dining room and shot her from the doorway leading into the kitchen. During this conversation Richter inquired of Cooper about some empty cartridges found in the Limerick home. Cooper believed he had fired the gun into the floor to make sure it would not misfire.

Defense counsel elicited from Richter upon cross-examination Richter had lied to Cooper during the May 29 conversation about Mrs. Limerick's condition. This was the conversation which had commenced, according to Richter, between 6:30 and 7 p.m. Richter admitted that during the questioning Cooper had asked about Mrs. Limerick's condition and that he had replied he did not know. However, the record discloses as a matter of fact Mrs. Limerick had passed away around 4 p.m. May 29. Richter testified he first learned of her death when he left the juvenile room during the questioning but did not inform Cooper of that fact when he returned and continued the interrogation even though defendant had again inquired as to her condition. Instead, Richter told Cooper he did not know. Richter admitted upon cross-examination he had lied to Cooper. The substance of Richter's testimony, including the lie about Limerick's death, had first come out at the preliminary hearing.

I. Defendant assigns three issues for review in seeking reversal. Although stated in somewhat different words they, in effect, challenge the court's ruling regarding admissibility of statements made by defendant to Richter, the assistant county attorney.

Defendant maintains these assignments present the question whether the fact the assistant county attorney lied as to the condition of Louise Limerick during the questioning of defendant and therefore as to the nature of the crime rendered his admissions inadmissible under the decision announced in *Miranda.*

Under the doctrines announced in *Miranda* a defendant is entitled to a warning that he may remain silent, that he is entitled to an attorney, that an attorney will be appointed if he cannot afford one and that whatever he says can be used against him. Any statements obtained from defendant in violation of such rules are inadmissible. State v. Sefcheck, 261 Iowa 1159, 1170, 157 N.W.2d 128, 134.

Defendant's argument is based on two premises: (1) Richter lied to Cooper during the interrogation on May 29 after finding out Mrs. Limerick was dead when he said, "I don't know," in response to Cooper's inquiry as to her condition and thereby tricked Cooper into giving an inculpatory statement; and (2) defendant was not advised of his constitutional rights under the *Miranda* decision upon Richter's second visit with defendant which took place in the cell area of the Pottawattamie jail between 6:30 and 7:30 p.m. May 31 and which was in fact the outset of a new interrogation process which lent itself to eliciting incriminating statements from Cooper.

The State on the other hand contends defendant failed to properly preserve in the trial court any alleged errors concerning the admissibility of defendant's statements to the assistant county attorney in a manner necessary to present an issue for review in this court; thus, defendant's present contentions cannot be urged for the first time on appeal.

II. Ordinarily, issues not raised in the trial court, including constitutional questions, cannot be effectively asserted the first time on appeal as a matter for reversal. State v. Russell, 216 N.W.2d 355, 356

(Iowa 1974) and State v. Tokatlian, 203 N.W.2d 116, 120 (Iowa 1972).

Hence, the initial problem to be determined is whether defendant in the present case preserved as an issue for review the contentions asserted in his assignments of error.

The State takes the position defendant waived his right to rely on *Miranda* by failing to *timely* interpose an objection, pointing out in what particular or particulars the challenged evidence was inadmissible. In support of its position the State relies on State v. Bruno, 204 N.W.2d 879 (Iowa 1973) and State v. Grady, 183 N.W.2d 707 (Iowa 1971).

The cited cases and other decisions of this court stating similar principles of law do not reach the question presented here since they concern the duty of the opponent seeking to exclude evidence called for by an examiner to sufficiently alert the trial court to the question raised and enable opposing counsel to take proper corrective measures to remedy the defect if possible.

"The problem of motions to strike when made by the examiner of a witness is easily confused with the problem of motions to strike by the opponent of the examiner. In the latter case a totally different set of principles is involved and there are many new factors to consider." Ladd, Objections, Motions and Foundation Testimony, 43 Cornell L.Q. 543, 556; citing 1 Wigmore on Evidence, (Third Ed.), section 18(B), p. 331. McCormick on Evidence, (Second Ed.), section 52, p. 113, is to the same effect.

The underlying theory of Cooper's attack on the trial court's ruling admitting evidence of incriminating statements elicited from him during interrogation is based on the contention such statements are involuntary and inadmissible when viewed in the light of the principles set forth in *Miranda*.

When the voluntariness of any confession or admission is questioned defendant is entitled to a fair hearing at some stage of the proceedings in which both the underlying factual issues and the voluntariness of his confession or admission are actually and reliably determined. Jackson v. Denno, 378 U.S. 368, 380, 84 S.Ct. 1774, 1783, 12 L.Ed.2d 908, 1 A.L.R.3d 1205 and State v. Holland, 258 Iowa 206, 214–216, 138 N.W.2d 86, 90–91.

As stated, evidence relative to Richter's lying to Cooper about Mrs. Limerick's condition first came to light at the preliminary hearing.

Defendant initially attempted to exclude incriminating statements attributed to him by motion filed December 11, 1972, during trial but before Richter was called as a witness, seeking to suppress, inter alia, defendant's statements made to Richter and Detective Clark May 29 and statements made to Richter and Zimmerman May 31 in the jail cell area. Asserted grounds were that the *Miranda* warnings had not been given, or if properly given, defendant could not consent to their waiver because of his physical and mental state. Waiver of constitutional grounds through trickery, cajolery, or fraud was not alleged.

In connection with the motion to suppress the parties had stipulated that the court should read the transcript of the preliminary hearing, particularly that portion of the proceedings dealing with Richter's testimony.

Before Richter was called as a State's witness at trial, the court made the following record:

"THE COURT: Let the record show that after a full hearing on the Motion to Suppress the Court is going to overrule the defendant's Motion to Suppress subject to giving the defendant, of course, the right to renew his objections at the time of the trial when the evidence is called for."

At trial Richter again testified as to his conversation with defendant May 29 and May 31. On cross-examination Richter stated defendant inquired as to Limerick's

condition to which he answered he did not know; the same answer was repeated after Richter became aware of the victim's death. It appears obvious from the record defendant was attempting by cross-examination to establish Richter had lied to Cooper during interrogation when defendant inquired about Mrs. Limerick's condition and had thus made the incriminating statements inadmissible since they were elicited by trickery or cajolery contrary to *Miranda*. *Id.* 384 U.S. at 476, 86 S.Ct. at 1629, 16 L.Ed.2d at 725.

At the close of Richter's testimony defendant, following redirect and recross-examination, moved to strike and expunge from the record all of this testimony. Among the grounds stated were: "(2) That said admissions were all obtained and produced by fraudulent act of the said David Richter, Assistant County Attorney. * * * (4) That by reason of withholding the fact that Louise Limerick had died at the time of the questioning, deprived the defendant of his constitutional rights as to the offense and reason he was being questioned."

The motion to strike and expunge was overruled by the court without further comment after unreported argument of counsel.

■ The question is narrowed to whether waiting to move to strike after completion of cross, redirect and recross of the same witness made the motion untimely and therefore constitutes a' waiver on this appeal.

As pointed out, this is not a situation where a motion is made by the opponent of the .examiner to strike or withdraw evidence where it was apparent, or should have been, at the time the evidence was offered it would be inadmissible if challenged by a proper objection. Rather, this is a case where the opponent is seeking to establish evidence introduced by the State which apparently was admissible was in fact inadmissible due to facts elicited for the first time on cross-examination.

It is the conclusion of the court the State's contention defendant's motion to strike and expunge was not timely cannot be sustained.

III. The State contends defendant's objections to Richter's testimony embodied in the motion to strike were not sufficiently specific to advise the trial court of the basis for inadmissibility of the testimony. This argument is divided into two parts. It is first contended the grounds of the motion were too vague, general and insufficiently specific because they failed to advise the trial court *which* of defendant's constitutional rights were violated by withholding the fact of Limerick's death. Thus, the State contends defendant's motion did not alert the court to the fact that either defendant's right against self-incrimination as protected by amendment 5 or his right to counsel guaranteed by amendment 6 was violated because only the words "constitutional rights" were used. In other words, the State insists defendant is required to enumerate *which* constitutional right was violated.

■ Unless reasons for an objection are obvious one attempting to exclude evidence whether by objection or motion has the duty to indicate the specific ground to the court so as to alert the judge to the question raised and enable opposing counsel to take proper corrective measures to remedy the defect if possible. Given the specific reference by motion to Richter's testimony and to the nature of the testimony as "admissions" and that "constitutional rights" were infringed, the motion sufficiently alerted the court that defendant's right against self-incrimination was involved.

■ In the alternative and cumulatively, the State argues defendant's motion did not sufficiently set out the grounds of trickery and cajolery here relied on. In the motion to strike it was stated Richter lied to defendant and "that said admissions

were all obtained and produced by fraudulent act of the said David Richter, Assistant County Attorney." In his brief, defendant refers to Richter's lie as "an active and willful misrepresentation," and that such deceit tricked or cajoled defendant into the waiver of his rights. The motion did not refer to trickery and from the record it is impossible to tell if that element was pointed out to the court. The motion only referred to a "fraudulent act."

The question is whether the use of the words "fraudulent act" was sufficient to advise and alert the court that Richter's lie tricked or cajoled defendant into making admissions. In other words, is "tricked or cajoled into waiving his rights" sufficiently equivalent to "that said admissions were all obtained and produced by fraudulent act" so as to be sufficiently specific to advise the trial court why the evidence should be stricken. From the evidence and the motion it is obvious the act involved was Richter's lie, and the motion states the "admissions" were obtained and produced by "the fraudulent act of the said David Richter." References in the motion to Richter's lie and to the allegation that such "fraudulent act" produced °the admissions were sufficiently specific to alert the trial court of the basis for the objection as trickery and cajolery such as prohibited under *Miranda*.

The State's arguments defendant failed to properly preserve for review asserted errors concerning the admissibility of incriminating statements elicited from him are without merit.

IV. This brings us to a consideration of the merits of defendant's·assignment of error in which he contends the fact the assistant county attorney lied to him as to the condition of decedent and therefore as to the nature of the crime renders his incriminating statements inadmissible under the doctrines announced in *Miranda*.

Defendant leans heavily on the following statement from Miranda v. Arizona, 384 U.S. at 476, 86 S.Ct. at 1629, 16 L.Ed.2d at 725: " * * * Moreover, any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege. The requirement of warnings and waiver of rights is a fundamental with respect to the Fifth Amendment privilege and not simply a preliminary ritual to existing methods of interrogation."

Cooper also relies on United States v. Murphy, 329 F.2d 68 (2 Cir. 1964), cert. den., 377 U.S. 967, 84 S.Ct. 1648, 12 L.Ed. 2d 737, and Brooks v. State, 117 So.2d 482 (Fla.1960).

The effect on the admissibility of statements obtained from a defendant in violation of rules announced in *Miranda* which this court recognized in State v. Sefcheck, 261 Iowa at 1170, 157 N.W.2d at 134 has been referred to in division I, supra, and will not be repeated at this point.

Both sides apparently assume Richter's response, "I don't know," to Cooper's second inquiry as to Mrs. Limerick's condition constituted trickery in view of the fact Richter then knew otherwise.

In this connection it is important to call attention to the fact defendant at no time contends any false promises of assistance were made to Cooper if he would give a statement regarding his shooting of Louise Limerick. Our review of the record discloses there were none.

The question is whether defendant was tricked into waiver of his constitutional rights. The first problem is what is the standard for determining whether there was a valid waiver. State v. Niccum, 190 N.W.2d 815, 822 (Iowa 1971), sets out the applicable principle as follows: "In determining whether the State has sustained its burden of establishing a valid waiver by defendant of his constitutionally protected rights in the absence of an express waiver, this court examines the totality of the circumstances—the attendant facts of the case—as shown in the record. This court has applied this test in determining similar

factual issues. * * * [citing authorities]." See also State v. Holderness, 191 N.W.2d 642, 646 (Iowa 1971) and State v. Fetters, 202 N.W.2d 84, 87–89 (Iowa 1972). The State's burden of proof is to the preponderance of the evidence. State v. Fetters, supra; Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618.

■ Thus, defendant's incriminating statements would be inadmissible only if the waiver of his constitutional rights was involuntary under a totality of the circumstances test. The test of voluntariness is "* * * whether the behavior of the State's law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self determined", a question to be answered with complete disregard of whether or not petitioner in fact spoke the truth. Rogers v. Richmond, 365 U.S. 534, 544, 81 S.Ct. 735, 741, 5 L.Ed.2d 760.

■ The giving of warnings of one's constitutional rights is a circumstance relevant to a finding of voluntariness. Davis v. State of North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895; Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L. Ed.2d 684.

The case of State v. Braun, 82 Wash.2d 157, 509 P.2d 742, not cited by either party, is on point and sets out many cases on the issue involved here. Defendant, appealing from a conviction of first degree murder, first degree kidnapping, robbery and larceny by possession, claimed his waiver was not voluntary because of deception practiced by police. Defendant Braun had committed the crimes with another man named Maine. The facts allegedly constituting the deception are as follows as stated by the court: "Between the time of Braun's first and second interrogation, Agent Smoot reinterviewed Maine and told him that his confession would be admissible against Braun if repeated in Braun's presence. Immediately preceding Braun's second interrogation Braun and Maine were allowed to confer pursuant to Braun's own request. At that time, Maine told Braun that he intended to confess in his presence and that a statement so made could be used against Braun. Actually this was a misstatement of California law. It had been related to Maine, however, for the purpose of inducing Braun to confess by convincing him that denial of Maine's assertions would be futile. Braun argues that such deception vitiates his waiver as a matter of law." Id. 509 P.2d at 745.

This type of deception, stated the court, was not the type which as a matter of law has been held to overbear a defendant's will to resist. The court then set out cases where confessions were held involuntary because of deception. Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760, police misrepresented to accused that his wife would be taken into custody if he did not confess. Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265, a friend would lose his job if accused did not confess. Leyra v. Denno, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948, a confession obtained while accused was hypnotized. In the following, confessions were held to be voluntary. State v. Keiper, 8 Or.App. 354, 493 P.2d 750 (1972), accused falsely told that his polygraph examination showed gross deceptive patterns. Commonwealth v. Baity, 428 Pa. 306, 237 A.2d 172, accused falsely told that codefendant had identified him as the "trigger man."

Included in the decisions considering the problem of trickery, deception and fraud are: United States ex rel. Lathan v. Deegan, 450 F.2d 181 (2 Cir. 1971); United States v. Glasgow, 451 F.2d 557 (9 Cir. 1971).; Atchley v. Wilson, 300 F.Supp. 68, 71 (N.D.Cal.1968), aff'd, 9 Cir., 412 F.2d 230; People v. Allen, 8 Mich.App. 408, 154 N.W.2d 570; McGee v. State, 2 Tenn.Cr. App. 100, 451 S.W.2d 709 (1969), cert. den., 400 U.S. 842, 91 S.Ct. 84, 27 L.Ed.2d 77; and People v. Robinson, 31 A.D.2d 724, 297 N.Y.S.2d 82. See also 3 Wigmore on Evidence, (Chadbourn Revision), section 841, where the author has collected decisions of many jurisdictions, various

law review articles, the efforts of many legal writers and annotations dealing with the effect of trickery or fraud in determining whether deception was such as to make a waiver of constitutional rights involuntary

■ Deception of any nature by representatives of the state cannot be condoned. However, we conclude deception standing alone does not render a waiver of constitutional rights involuntary as a matter of law unless the deceiving acts amount to a deprivation of due process. Nevertheless, deception becomes a factor to be considered in reviewing the totality of the circumstances in making the determination as to the voluntariness of the waiver even though the act does not per se produce exclusion.

■ Under this test Cooper's waiver of his right to counsel and privilege against self-incrimination was not involuntary and therefore Richter's testimony detailing the facts given to him by Cooper during the interrogation following Richter's awareness of Mrs. Limerick's death was properly admissible.

■ Defendant also urges that when the new questioning by Richter began, which was after his knowledge of decedent's death, Cooper should have been informed of the death and given a new *Miranda* warning. The record is without dispute proper warnings were given before the start of the interrogation. He relies solely on Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381. There were no warnings given and the Supreme Court held that warnings were necessary even though defendant was in custody for another crime. We have not been cited to any decision which extends the *Mathis* rationale to the situation presented here.

In State v. Davis, 261 Iowa 1351, 1354, 157 N.W.2d 907, 909, the court said:

"An accused need not be advised of his constitutional rights more than once unless the time of warning and the time of subsequent interrogation are too remote in time from one another."

In State v. Clough, 259 Iowa 1351, 1359, 147 N.W.2d 847, 852, this court noted that advising defendant of the exact charge to be placed against him is not one of the requirements set forth in *Miranda*.

The contention is without merit.

V. In his final assignment defendant argues that statements made by him at the subsequent interrogation by Richter on May 31 were inadmissible because no *Miranda* warnings were given.

In other words, defendant contends it was essential that investigating officers advise him of his full complement of rights, as announced in *Miranda*, prior to each and every interrogation.

A similar contention was rejected in Tucker v. United States, 375 F.2d 363 (8 Cir. 1967) and in Miller v. United States, 396 F.2d 492 (8 Cir. 1968). See also Evans v. Swenson, 455 F.2d 291 (8 Cir. 1972); Maguire v. United States, 396 F.2d 327 (9 Cir. 1968); and United States v. Osterburg, 423 F.2d 704 (9 Cir. 1970).

In *Miller* the court noted that "the implicit holding in *Tucker* was that a confession is not necessarily invalid because the '*Miranda* warning' is not repeated in full each time the interrogation process is resumed after an interruption." *Id*. 396 F.2d at 496.

The case before us is not factually similar to Westover v. United States, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, a companion case to *Miranda*.

The ultimate question is did defendant with a full knowledge of his legal rights knowingly and intelligently relinquish them. Miller v. United States, 396 F.2d at 496.

In determining the question attention is directed to the fact that Cooper had never invoked his privilege against self-incrimi-

nation at any time during the interrogations on May 29.

Our review of the total circumstances compels the conclusion Cooper had a full knowledge of his constitutional rights and knowingly and intelligently relinquished them prior to any interrogation on May 31.

Defendant's contention is without merit.

The case is therefore

Affirmed.