STATE of Iowa, Appellee,

v.

Donald F. RUSSELL, Appellant.

No. 59345.

Supreme Court of Iowa.

Jan. 18, 1978.

Timothy G. Pearson, of Hyland & Laden, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Thomas A. Evans, Asst. Atty. Gen., and Jerrold B. Oliver, County Atty., for appellee.

Heard by MOORE, C. J., and RAWLINGS, LeGRAND, UHLENHOPP and HARRIS, JJ.

MOORE, Chief Justice.

Defendant appeals his conviction for arson in violation of Code section 707.2. He asserts trial court erred in overruling his motion to suppress testimony concerning conversations he had with police after his arrest and while he was hospitalized for severe burns in University Hospital in Iowa City. Additionally, he claims the court erred in permitting a tape of conversation to be admitted into evidence and played at trial where no proper foundation had been laid. We affirm.

Viewed in a light most favorable to the verdict, the evidence showed that in the early morning hours of July 14, 1975, a major fire broke out in downtown Earlham, Iowa, which completely destroyed a commercial building housing the Acme Tent and Awning Company. Several spectators of the blaze testified they observed an individual, later identified as the defendant, standing near the burning building with his pants rolled up, wearing no shoes and carrying a broom. All noted it appeared he had been severely burned.

However, when the sheriff's deputies arrived at the scene they were unable to locate this individual even after an extensive search throughout the downtown area.

At approximately 7:45 a. m., four hours after the fire was reported, the deputies noticed the Earlham Tavern had been broken into. Upon entering the establishment they observed a badly burned individual, later identified as defendant, wearing no shoes and fanning a burning yellow jacket with an aluminum pie pan. They noted he had a broom nearby. After containing the fire they arrested defendant for the illegal breaking and entering of the tavern. Arresting Deputy Sheriff John Toppenberg read defendant his *Miranda* rights and later testified defendant stated he understood them. When defendant later complained to Deputy Sheriff Edward Powell that he had not been read his rights, Toppenberg repeated the procedure. Sheriff Rex Rouse then arrived at the tavern and was made aware the *Miranda* rights had been read to defendant. Thereafter a brief discussion ensued during which defendant admitted he had broken into the tavern. He stated he did so because he needed liquid due to his burned condition.

Defendant was then taken by Rouse and Toppenberg to the Madison County Hospital for treatment. Later he was transferred to Broadlawns Hospital in Des Moines. During the ambulance ride, Deputy Toppenberg continued questioning defendant about his activities on the evening of July 14. The evidence discloses the following exchange took place:

"Q: (Officer Toppenberg): No, the big fire. You had to go in there to get burned like this.

"A: (Defendant Russell): It was because I heard voices or animals or something inside."

Deputy Toppenberg testified he did not believe defendant's condition affected his ability to understand the *Miranda* warnings. At the motion to suppress hearing he opined defendant's answers to questions were both "responsive" and "articulate." Sheriff Rex Rouse testified that while defendant was somewhat incoherent and bordering on shock he nonetheless "was understanding things right down the line."

Eventually defendant was transferred to University Hospital in Iowa City where he could obtain specialized treatment at the Burn Center. While there, on July 17, 1975, three days after he was arrested, he was interrogated in his hospital room by Sheriff Rouse and State Deputy Fire Marshall, Joe Beal.

Rouse testified he asked defendant whether he remembered he was under arrest for a breaking and entering charge and had been given his "rights." Defendant said he did. Rouse then asked whether their conversation could be taped. Defendant said he had no objection. Defendant evidenced an understanding of his rights and was not again read his *Miranda* warnings prior to questioning. However, these matters were not recorded together with some introductory "non-pertinent" conversation relating to defendant's physical condition prior to commencement of the actual taping. In the tape defendant described losing his brown boots (a similar pair was found at the fire scene), wearing a blue jacket on the night of the fire, getting burned when he looked in a window of the burning building, calling a friend to inform him of the fire and entering the tavern.

Prior to trial defendant moved to suppress the statements made at the tavern, during the ambulance ride and the tape-recorded hospital conversation. He challenged the first statements on the basis his mental and physical condition prevented him from understanding his *Miranda* rights. The tape-recorded statement was challenged on the basis the tape was incomplete and did not contain his permission for the recording. Trial court overruled the motion, holding that defendant had been prop-erly advised of his rights, the *Miranda* warnings were of continuing validity, not "stale", and thus new warnings were not required three days later at the hospital.

At trial the State offered the tape into evidence after Sheriff Rouse testified he operated the machine, explained the "chain of custody" and said who was present during the session. Defense counsel objected to the introduction of the tape asserting no proper foundation had been laid.

The objection was overruled and the tape was then played to the jury with Rouse identifying the voices of the participants.

The jury later returned a guilty verdict and defendant was thereafter sentenced to a term not to exceed 10 years at the penitentiary.

I. Defendant-appellant first contends the statements to the officers were taken in violation of his constitutional rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The crux of his argument is two-pronged. First he asserts although he was given the *"Miranda* warning" on July 14th when he was arrested, his physical condition affected his ability to understand the warning and consequently he was unable to knowingly and understandably waive his right to remain silent. Second, he asserts that even if he was capable of understanding the warnings when originally given, the time lapse of three days rendered his waiver invalid because it was remote from and not contemporaneous with the time of the original warnings.

■ Since this assignment of error presents federal constitutional issues, we make an independent evaluation of the totality of the circumstances from which the assertion of unconstitutionality arises. We review the evidence de novo. *State v. Snethen,* Iowa, 245 N.W.2d 308, 311; *State v. Conner,* Iowa, 241 N.W.2d 447, 453.

■ It is well established an individual may waive his constitutional rights, that is, he may intentionally relinquish or abandon a known right. *State v. Hilpipre,* Iowa, 242 N.W.2d 306, 309; *State v. Fetters,* Iowa, 202 N.W.2d 84, 89; *State v. Niccum,* Iowa,

190 N.W.2d 815, 822. However, it is incumbent upon the State to prove by a preponderance of evidence such waiver was knowingly, voluntarily and intelligently done. *State v. Hilpipre,* supra, 242 N.W.2d at 311.

■ Initially we must determine whether defendant effected a valid waiver at the Earlham Tavern when he was arrested. There is no question defendant was seriously burned on his legs and one arm which required treatment at the Iowa University Hospital's Special Burn Unit. The crucial point of our inquiry is the effect of these injuries on his capacity to understandably and intelligently relinquish his constitutional rights.

At the hearing on defendant's motion to suppress the State offered the testimony of Madison County Deputy Sheriff John Toppenberg and Madison County Sheriff Rex Rouse. Toppenberg testified he twice gave defendant the *Miranda* warnings and although defendant was injured he was "coherent, responsive and articulate." Rouse, who arrived on the scene after defendant had been given the *Miranda* warnings, stated defendant was evidently in great pain from his burns, "probably in shock", but "was understanding things right down the line." "We would ask him something again and he would give us the same answers." The officer's testimony was not contradicted.

In previous cases we have dealt with the issue of psychological stress, impaired judgment and waiver of rights. Recently in *State v. Hahn,* Iowa, 259 N.W.2d 753, 757, 758, although reversing on other grounds, we rejected defendant's contention that her mental subnormality deprived her of the capacity to understand the meaning and effect of the warnings, thus precluding a valid waiver. Also see *State v. Fetters,* supra. We held mental subnormality is but one factor to be considered in the totality of the circumstances and it does not, by itself, negate an otherwise valid waiver. Earlier, in *State v. Youngbear,* Iowa, 229 N.W.2d 728, 736, we applied the same analysis where defendant claimed impairment by alcohol.

Similarly in *State v. Jacoby,* Iowa, 260 N.W.2d 828, 832, 833 (1977) we held defendant's emotional distress was not so great under the circumstances as to vitiate an otherwise valid waiver of her *Miranda* rights.

As with the above factors, we do not believe the fact defendant was in a "state of shock" at the time he was given the *Miranda* warnings necessarily vitiates waiver of constitutional rights. Two opinions from the Missouri Court of Appeals graphically underscore this view. In *State v. Ambus,* Mo.App., 522 S.W.2d 306, 311, 312, defendant had been shot several times, his hand had been severely injured and his thumb had been nearly torn off. Defendant made an inculpatory statement after the *Miranda* warnings were given and later moved to suppress the statement based on an argument similar to that raised here by defendant. The Missouri court affirmed the trial court's order overruling the motion and stated, "The fact that the defendant was wounded does not preclude a waiver." In *State v. Hampton,* Mo.App., 509 S.W.2d 139, 143, the court reached the same conclusion in another case where defendant had been shot and required hospital treatment:

" * * * Contrary to defendant's claim, the fact that he was in the hospital awaiting treatment when he made the incriminating statements does not preclude the finding that his waiver was voluntary where there is no evidence that his physical condition in any way inhibited his understanding of the *Miranda* rights. * * *."

Recently the Arizona Supreme Court discussed waiver principles in a case involving murder by arson. In *State v. Knapp,* 114 Ariz. 531, 562 P.2d 704, 711, the defendant was read his *Miranda* rights at the scene of the fatal fire. Thereafter he discussed the refusal of the justice of peace to appoint counsel. In response to this statement, the arresting officer again advised him that an attorney could be obtained. Defendant then made inculpatory statements. The Arizona court held that in these circumstances there was no violation of *Miranda.*

■ In our de novo review of the totality of the circumstances, we believe under this record the State showed by a preponderance of the evidence that despite being in a "state of shock", defendant voluntarily and intelligently waived his *Miranda* rights. It is not controlling that defendant was told he was under arrest for breaking and entering rather than the crime of arson. Advising defendant of the exact nature of the charge to be placed against him is not one of the requirements set forth in *Miranda. State v. Clough,* 259 Iowa 1351, 1359, 147 N.W.2d 847, 852.

■ II. We turn now to defendant's contention that Sheriff Rouse should have repeated the *Miranda* warning prior to questioning him in his hospital room three days later, the failure to do so rendered the warnings "stale" and consequently any statements made at that time were constitutionally impermissible.

As defendant acknowledges in his brief, we previously have rejected the argument that it is essential in every instance for investigating officers to advise him of his full complement of rights as announced in *Miranda* prior to each and every investigation. *State v. Cooper,* Iowa, 217 N.W.2d 589, 597–598; *State v. Davis,* 261 Iowa 1351, 1354, 157 N.W.2d 907, 909.

In *Cooper,* defendant was given *Miranda* warnings prior to his interrogation on May 29 and never invoked his privilege against self-incrimination. Two days later, on May 31, he was again interrogated but this time no warnings were given. We held the statements taken at the second interrogation were properly admissible, stating at page 598:

"Our review of the total circumstances compels the conclusion Cooper had a full knowledge of his constitutional rights and knowingly and intelligently relinquished them prior to any interrogation on May 31."

*Cooper* expanded somewhat our holding in *State v. Davis,* supra. There, defendant made a statement, absent warnings, while he was in custody at a hospital about one and one-half hours after the time of his arrest. We held the warning was sufficient and fashioned this test:

"An accused need not be advised of his constitutional rights more than once unless the time of warning and the time of subsequent interrogation are too remote in time from one another. * * *." 261 Iowa at 1354, 157 N.W.2d at 909.

Many courts have rejected an automatic second warning system, citing numerous factors influencing their decision but focusing primarily on the time lapse and the subsequent interrogation. See *United States v. Standing Soldier,* 8 Cir., 538 F.2d 196 (proper warnings given March 26, no warnings April 2 when statement made; however, when defendant was asked whether he was aware of and knew contents of *Miranda* warnings he acknowledged he did. The Eighth Circuit upheld use of defendant's statement); *Biddy v. Diamond,* 5 Cir., 516 F.2d 118 (proper warnings given December 15, defendant requested an attorney. 12 days later, in absence of counsel, warnings held not stale where in response to police inquiry, she stated she remembered her rights as previously explained); *Maguire v. United States,* 9 Cir., 396 F.2d 327 (3 day lapse between warning and later interrogation upheld); *Tucker v. United States,* 8 Cir., 375 F.2d 363 (1½ day lapse upheld); *Johnson v. State,* 56 Ala.App. 583, 324 So.2d 298 (3 day interval upheld); *Reaves v. State,* Tenn.Cr.App., 523 S.W.2d 218 (1 day lapse upheld); *Moten v. State,* 231 Ga. 642, 203 S.E.2d 527 (2 day lapse upheld); *State v. Carlton,* 83 N.M. 644, 495 P.2d 1091 (1 day lapse upheld); *State v. Gilreath,* 107 Ariz. 318, 487 P.2d 385 (subsequent interrogations which took place 12 and 36 hours after warnings given upheld); *State v. Rowe,* 77 Wash.2d 955, 468 P.2d 1000 (2 day interval upheld); *State v. Blanchey,* 75 Wash.2d 926, 454 P.2d 841 (4 day interval upheld—defendant said he was aware of warnings); *State v. Magee,* 52 N.J. 352, 245 A.2d 339 (2½ day interval upheld).

In his brief defendant relies on *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313, as support for his assignment

of error. After a careful reading of that opinion we can only conclude this reliance is misplaced. In *Mosley,* the Supreme Court discussed whether after a defendant has once cut off questioning the police may again resume interrogation at a later time. The Supreme Court upheld the conviction and stated there was no abrogation of the defendant's *Miranda* rights.

After review of all these facts we do not believe the trial court erred in refusing to suppress defendant's statements of July 17, 1975, and finding that when defendant responded to the questions asked of him at the second interrogation, he was fully apprised of his right to remain silent and thus had intelligently waived his right. No second warnings were required.

■ III. Defendant next contends trial court erred in admitting into evidence the tape recording of his previously challenged conversation with police authorities where no proper foundation had been laid for its introduction. He urges we should adopt the specific foundational requirements for taped evidence set forth in *United States v. McMillan,* 8 Cir., 508 F.2d 101. Additionally he contends the contents of the tape were admitted in violation of the hearsay rule. His argument is premised on the fact that the tapes did not qualify under Code section 622.28, Business Records Exception. We shall discuss these issues in reverse order.

We quickly dispose of the latter contention. Although during trial defendant did not challenge admissibility of the tape on section 622.28 grounds, even if he had, the contents of the tape were clearly admissible as admissions. See Rule 801(d)(2)(A), Federal Rule of Evidence; *State v. Kidd,* Iowa, 239 N.W.2d 860, 864.

■ Defendant's main argument here is that the specific foundational requirements of *United States v. McMillan, supra,* were absent and thus the tape was improperly admitted into evidence.

In *McMillan* the Eighth Circuit adopted the test first authoritatively set forth in *United States v. McKeever,* S.D.N.Y., 169 F.Supp. 426, 430, for authentication of sound recordings. Under this test the party introducing sound recordings must establish that: 1) the recording device was capable of taping the conversation now offered in evidence; 2) the operator of the device was competent to operate the device; 3) the recording is authentic and correct; 4) changes, additions or deletions have not been made in the recording; 5) the recording has been preserved in a manner that is shown to the court; 6) that the speakers are identified; 7) that the conversation elicited was made voluntarily and in good faith, without any kind of inducement. See *United States v. McMillan, supra,* 508 F.2d at 104.

Prefatorily, we note this court has not yet adopted the "particularized technical" test for admissibility set forth in *McMillan.* What has been required is that the foundation for the evidence clearly establish that it is accurate and trustworthy. Our leading case on this issue is *State v. Anderson,* Iowa, 159 N.W.2d 809, 815 where we held tapes admissible against a foundational challenge, stating:

"The trial court had before it a recording of the police radio messages, and also the operator of the devices and custodian of the tapes. If it was convinced of the accuracy of the mechanical and human operations, and that proper care of the record had been exercised, its broad discretion to determine the admissibility of the evidence as relevant and trustworthy will not be disturbed upon appeal unless abuse of that discretion appears. We find no such abuse here."

Furthermore, as the State discusses in its brief, not all federal circuits strictly adhere to the seven requirements of *McMillan.* In *United States v. Biggins,* 5 Cir., 551 F.2d 64, 66–67, while conceding that strict compliance with a particularized burden is the preferred method of proceeding, the Fifth Circuit declined to adopt an ironclad test and stated:

" * * * . If there is independent evidence of the accuracy of the tape recordings admitted at trial, we shall be extremely reluctant to disturb the trial

court's decision even though at the time that decision was made the government had not carried its particularized burden of going forward."

Also see *United States v. Hassell,* 8 Cir., 547 F.2d 1048, 1054–1055.

With this in mind we review the foundation which was made at trial. That foundation was established through the testimony of the operator of the tape recorder, Sheriff Rex Rouse. Rouse testified on July 17 he went to Iowa City with Deputy Fire Marshall Beal for the purpose of interviewing defendant. They arrived at 11:30 a. m., went to defendant's room, introduced themselves and asked if he understood his previous *Miranda* warnings and then asked permission to record the conversation. Defendant answered in the affirmative but this was not reflected on the tape itself. Subsequently the machine was turned on and recorded the conversation.

Sheriff Rouse specifically testified that 1) the exhibit was the tape he made, that the "new recorder" was his; 2) that he was familiar with the machine although he did admit some difficulty getting it operational on this particular occasion; 3) that he had listened to the tape and it was a true and accurate recording of the conversation which took place in the hospital; 4) that there had been no alterations or changes made in the tape; 5) that the chain of custody was established; 6) that the speakers were identified as Rouse, Beal and defendant Russell; 7) that to his knowledge the conversation was given and recorded without inducement and was done voluntarily.

After review of the entire record made at trial we believe trial court properly exercised its discretion in admitting the tape into evidence.

We find no reversible error.

AFFIRMED.