**IN THE COURT OF APPEALS OF IOWA**

No. 23-0914
Filed October 2, 2024

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**TACOA TALLEY,**
        Defendant-Appellant.
_____


        Appeal from the Iowa District Court for Benton County, Chad Kepros,

Judge.


        The defendant appeals two evidentiary rulings and the inclusion of certain

language in a jury instruction. **AFFIRMED.**


        Martha J. Lucey, State Appellate Defender, and Vidhya K. Reddy, Assistant

Appellate Defender, for appellant.

        Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee.


        Heard by Greer, P.J., and Ahlers and Badding, JJ.

**GREER, Presiding Judge.**

Tacoa Talley was arrested and charged in the death of Jodie Bevans. A jury convicted him of murder in the first degree, a class "A" felony. His co-conspirator, girlfriend, and mother of his three children, Samantha Bevans, was charged separately. Talley appeals his conviction, challenging the admission of three exhibits that pertain to a Snapchat video posted on Samantha's social media shortly after Jodie's death. Additionally, Talley challenges language included in one of the twenty-eight jury instructions. After reviewing the record and considering the arguments, we affirm the conviction.

**I. Background Facts and Proceedings.**

Talley and Samantha created and posted a Snapchat video less than forty-eight hours after Jodie's death. The transcript of the video read as follows:

> Talley: Sam
> Samantha: I killed her
> Talley: Keep Goin'
> Samantha: I killed her myself
> Talley: And I knew that this was happen so good job
> Samantha: We killed her
> Talley: Yeah we di— [unintelligible]

The State introduced evidence stemming from the Snapchat video in three forms: the original video (exhibit 1); an audio clip (without images) that isolated audio of only Talley's voice from the Snapchat video, amplified for easier listening (exhibit 2); and a still image taken from the video with the audio recording of both voices, with the amplified version of Talley's words (exhibit 58).

Talley moved in limine to exclude the full content of the Snapchat video and any exhibits related to it. Prior to trial, the district court ruled that before admission

the State needed to present a proper foundation that the "video recording and statements within the recording are what the State purports them to be."[1] At the trial, outside the presence of the jury, the district court allowed the State to develop foundation for the admission of the three Snapchat exhibits before opening statements. And although Talley initially stated he had no objections to either exhibit 1 or 2 and only objected to exhibit 58 as redundant and not showing the full context of the other two exhibits, the State presented evidence to lay foundation for all three exhibits through testimony of a special agent with the Iowa Division of Criminal Investigation (DCI), who was involved in the investigation. Later after that presentation, which included how exhibit 1 was modified in the preparation of the other two Snapchat exhibits, Talley objected to the "enhanced videos" on the basis they were "altered." After objections were made on the record, the district court concluded the State provided sufficient foundation for the three exhibits.

The State also created a transcript of the audio originally found in exhibit 1, which it sought to admit as a separate exhibit (exhibit 61). At the hearing on the motion in limine, Talley objected to the transcript as a violation of the best evidence rule. *See* Iowa R. Evid. 5.1002. At trial, he objected based on "Rule 403." *See* Iowa R. Evid. 5.403. The district court admitted the transcript as an exhibit over Talley's objections, and the transcript was marked both as an exhibit for trial and as a court exhibit. However, the district court did not allow presentation of the transcript until after the jury heard the actual audio of the recording.

---

[1] The district court excluded a comment made by Samantha at the end of the recording that the court found was "not adopted" by Talley and, thus, would not be considered a part of any admission by him.

After the parties submitted proposed jury instructions, Talley raised an objection to the stock language in one of the instructions. Specifically, Talley objected to the highlighted language as follows: "Try to reconcile any conflicts in the evidence*; but if you cannot, accept the evidence you find more believable*." (Emphasis added.) The district court rejected Talley's arguments over the language and gave the original instruction as written, along with twenty-seven additional instructions.

After deliberation, the jury returned a unanimous guilty verdict for murder in the first degree. As required by statute, the court imposed a mandatory life sentence without the possibility of parole at sentencing. Talley now appeals.

## II. Standards of Review.

Two standards of review are applicable in this case. The first two questions presented for review are evidentiary questions, which we review for an abuse of discretion. *See State v. Buller*, 517 N.W.2d 711, 712 (Iowa 1994) ("We review questions of admissibility of evidence for an abuse of district court discretion, meaning that we accord wide latitude to the district court on the question of sufficiency of foundation."); *see also State v. Helmers*, 753 N.W.2d 565, 567 (Iowa 2008) ("[W]e generally review evidentiary rulings for abuse of discretion."). "A court abuses its discretion when it exercised its discretion on 'grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *Helmers*, 753 N.W.2d at 567 (citations omitted).

The final issue presented for review is a question concerning jury instructions. We review "issues of jury instructions . . . for errors at law." *State v. Anderson*, 636 N.W.2d 26, 30 (Iowa 2001). "[W]e consider the jury instructions as

a whole rather than in isolation to determine whether they correctly state the law."
*State v. Benson*, 919 N.W.2d 237, 242 (Iowa 2018).

**III. Discussion.**

Talley raises three issues on appeal. We discuss each issue individually.

**A. Foundation Challenge to Snapchat Evidence.**

The parties disagree as to whether error was preserved on Talley's objection to exhibit 2. Because we conclude that the court intended the limine ruling on the admissibility of both exhibits 2 and 58 to be final, we find error was preserved. *See State v. Alberts*, 722 N.W.2d 402, 406 (Iowa 2006) ("[I]f the [limine] ruling reaches the ultimate issue and declares the evidence admissible or inadmissible, it is ordinarily a final ruling and need not be questioned again during trial [to preserve error]." (citation omitted)).

We now shift to the substance of the defendant's argument. Talley asserts that the appropriate test for determining if an altered audio or video file may be admitted into evidence is the "particularized technical" test from *United States v. McMillan*, 508 F.2d 101, 104 (8th Cir. 1974). But Iowa has not adopted the *McMillan* test, declining to do so as far back as 1978. *See State v. Russell,* 261 N.W.2d 490, 495 (Iowa 1978). Instead, Iowa courts look to whether the evidence establishes that a video or recording is accurate and trustworthy. *Id.*

The court must ascertain if the parties have laid adequate foundation as to the accuracy and trustworthiness; "the foundational bar is low." *State v. English*, No. 21-0315, 2022 WL 3052322, at *5 (Iowa Ct. App. Aug. 3, 2022). "The authentication component of foundation 'is satisfied if sufficient proof has been

introduced so that a reasonable juror could find in favor of authenticity or identification.'" *Id.*; *see also* Iowa R. Evid. 5.901(a).

Under Iowa law, the offering party of an audio or video file must provide sufficient evidence so that "a reasonable juror could" find the pertinent evidence to be accurate and trustworthy. *English*, 2022 WL 3052322, at *5. Talley cited *State v. Anderson* as the leading authority on the issue. 159 N.W.2d 809, 815 (Iowa 1968). The *Anderson* court stated, in conclusion:

> The trial court had before it a recording of the police radio messages, and also the operator of the devices and custodian of the tapes. If it was convinced of the accuracy of the mechanical and human operations, and that proper care of the record had been exercised, its broad discretion to determine the admissibility of the evidence as relevant and trustworthy will not be disturbed upon appeal unless abuse of that discretion appears. We find no such abuse here.

*Id.* Here, the DCI special agent, who was the operator of the devices and the custodian of the digital recordings, testified at trial and discussed the unchallenged original video and the modified versions and how they compared. In line with the analysis in *Anderson*, and consistent with our case law, we conclude that the district court did not abuse its discretion in ruling that a reasonable juror could find that the tapes purport to be what is claimed: a set of edited audio recordings that were either maintained in custody by the DCI or edited by experts known in the law enforcement field at the request of the DCI.

Additionally, the district court did not abuse its discretion in determining that the State provided adequation foundation so that a reasonable juror could find the evidence accurate and trustworthy as to substance. The State presented three versions of the original Snapchat video, describing the content and quality of the

original video and the process that DCI used to enhance or amplify the audio. Perhaps most importantly, the State offered three versions involving the Snapchat recording so that jurors were able to compare the enhanced or amplified audio in exhibits 2 and 58 to the original video. Finally, if Talley believed the audio was manipulated to the point where the dialogue was changed in substance, he was free to attack the audio on accuracy grounds during trial.

We conclude the district court did not abuse its discretion in admitting the enhanced or amplified versions of exhibit 1, namely exhibits 2 and 58.

**B. Evidentiary Challenge to Transcript of Snapchat Video.**

Outside the presence of the jury, Talley objected to the admission of the Snapchat transcript as an exhibit of the State. The court made a final ruling, admitting the transcript marked as exhibit 61. Because the ruling was final, Talley preserved his objection for appellate review. And the district court has broad discretion here. *See* 7 Laurie Kratky Doré, *Iowa Practice Series: Evidence* § 5:1002:2 n.15 (Oct. 2023 update) ("The use of transcripts to facilitate understanding of a recording lies within the sound discretion of the trial court.").

Three Iowa cases shed light on the instant dispute.

*State v. Allen* guides our analysis into whether transcripts may be admitted into evidence when the content of a transcript is in dispute. 565 N.W.2d 333, 339 (Iowa 1997). In *Allen*, defense argued that the transcript was not the best evidence because homonyms "Cheri" and "Sherry" were inappropriately substituted and certain parts of the audio were inaudible. *Id.* Nevertheless, the *Allen* court admitted the transcript, concluding there was no merit to the claim. *Id.* The court ruled that because the jury had both the transcript and the tape to review, the jury

was the ultimate factfinder as to the weight and credibility of the transcript, as was appropriate. *Id.*

In 2011, a panel of this court relied on *Allen* in determining, once again, that if the "jury had both the audio recording and the transcript to review, [it] minimize[ed] any possibility of unfairness." *State v. Smith*, No. 09-1889, 2011 WL 2069868, at *6 (Iowa Ct. App. May 25, 2011). In *Smith*, the district court did not admit the transcript as evidence, so the jury could not review it as an exhibit, but provided the transcript to the jury so that it could "follow along." *Id.*

Finally, most recently, a panel of this court cited *Allen* when succinctly articulating, "[T]he jury had both the video recordings and the transcripts. . . . The jury could compare the recordings with the transcripts and make its own determination as to the transcripts' accuracy. We find no abuse of discretion in the district court admitting them." *State v. Petties*, No. 17-0662, 2019 WL 480300, at *9 (Iowa Ct. App. Feb. 6, 2019).

Today, we add another data point to *Allen*'s progeny. In this matter, both the original video, exhibit 1, and the transcript, exhibit 61, were admitted into evidence. Although portions of the transcript included audio that was difficult, but not impossible, to decipher with the naked ear, the jury was free to weigh the disputed audio against the transcript. The jury, before reading the transcript, was instructed to first listen to the audio without the transcript, to assess whether it heard what the transcript purportedly transcribed. The jury could then independently assess the validity and reliability of the transcript at issue. As a result, we see no abuse of discretion of the trial court in admitting the Snapchat transcript.

**C. Objection to Jury Instruction.**

Talley's dispute with the stock jury instruction submitted to the jury concerns the highlighted portion of the instruction: "Try to reconcile any conflicts in the evidence; *but if you cannot, accept the evidence you find more believable.*" Iowa Crim. Jury Instructions 100.7 (emphasis added). Talley argues the clause after the semi-colon misstates the applicable law because it demands that jurors "essentially choose a side." Talley also argues the language interferes with the jury's implementation of the reasonable-doubt standard. The language at issue is quoted verbatim from Iowa's model jury instructions, and the district court submitted several instructions specific to the reasonable doubt standard that were also stock instructions.

Although litigants have previously challenged the specific language in this instruction, the language has consistently been upheld by this court. *See State v. Bielfelt*, No. 19-0201, 2020 WL 3264373, at *3 (Iowa Ct. App. June 17, 2020) ("We find [the] challenge to the uniform instruction unpersuasive . . . ."); *Braggs v. State*, No. 11-0942, 2013 WL 2637810, at *1 (Iowa Ct. App. June 12, 2013) ("[T]he jury instruction . . . merely instructed the jury on how to consider the evidence, particularly in light of the fact it is nearly identical to the uniform instruction and is not a misstatement of law."); *Moon v. State*, No. 05-0816, 2007 WL 1345732, at *8 (Iowa Ct. App. May 9, 2007) ("These instructions simply note the ways in which the jury should evaluate the credibility of witnesses."); *State v. Campbell*, No. 02-1444, 2004 WL 433713, at *2 (Iowa Ct. App. Mar. 10, 2004) ("The jury was properly instructed they were the arbiters of a [witness's] credibility and could accept, or reject, all, part, or none of a [witness's] testimony."); *State v. Marshall*, No. 01-

1117, 2002 WL 31308598, at *4 (Iowa Ct. App Oct. 16, 2002) ("These instructions were proper statements of the law. A jury is free to believe or disbelieve any testimony it chooses and to give as much weight to the evidence as it determines the evidence should receive.").

We echo the language previously used by this court and find no error in allowing the submission of this jury instruction.

**IV. Conclusion.**

Because we find no abuse of discretion regarding the admission of the various forms of Snapchat evidence and no error in giving the jury the challenged jury instruction, we affirm Talley's conviction.

**AFFIRMED.**

Badding, J., concurs; Ahlers, J., concurs specially.

**AHLERS, Judge** (specially concurring).

Without reservation, I join the majority opinion. I write separately only to suggest that some improvement could be made to the challenged stock jury instruction.

The relevant part of the challenged instruction reads, "Try to reconcile any conflicts in the evidence; *but if you cannot, accept the evidence you find more believable*." (Emphasis added.) This is identical to the language in the stock instruction. *See* Iowa Crim. Jury Instructions 100.7. The crux of the objection to the instruction is that it seems to suggest that conflicting evidence presents a binary dilemma—meaning jurors are obligated to accept at least one of the pieces of conflicting evidence—when, in fact, jurors are not required to accept any of the conflicting evidence. The principle that jurors are not required to accept any of the conflicting evidence is somewhat set forth in the next paragraph of the challenged instruction. *See id.* ("You may believe all, part, or none of any witness's testimony.").[2] And, of course, instructions are considered as a whole in determining their accuracy. *See State v. Kraai*, 969 N.W.2d 487, 490 (Iowa 2022). So it makes sense that we look to the instructions as a whole in finding the instruction here does not misstate the law. In fact, reliance on the principle that we consider the instructions as a whole is the foundation for at least one of the cases relied upon by the majority that found no error in instruction 100.7. *See State v. Marshall*, No. 01-1117, 2002 WL 31308598, at *4 (Iowa Ct. App. Oct. 16,

---

[2] I say "somewhat" because the part of the instruction informing jurors they are permitted to believe all, part, or none of the evidence refers only to witness testimony, not other types of evidence such as exhibits.

2002) (finding the instruction to be a correct statement of the law because "the jury can believe all, some, or none of the testimony of the witnesses").

When viewed as a whole, I agree with the majority that the instruction given here did not misstate the law. But the fact the instruction does not misstate the law is the bare minimum requirement. The ultimate goal is to make instructions "models of clear, concise, accurate, and impartial instructions which are understandable to the average juror." *See* Iowa Crim. Jury Instructions, Introduction. The fact that this instruction has been challenged as many times as it has suggests to me that it is not clear and there is room for improvement. The State acknowledged as much during oral argument. The conclusion that the stock language is not clear is strengthened by the fact that we frequently point to other parts of the instruction (i.e., the part that permits jurors to "believe all, part, or none of any witness's testimony") or other instructions to try to make sense of the challenged passage. *See Marshall*, 2002 WL 31308598, at *4. When part of an instruction requires the help of other instructions to make sense, I'm convinced it doesn't achieve our goal of making the instruction clear to the average juror.

Being convinced that there is room for improvement to the challenged language, I write separately simply to highlight the issue and recommend the jury-instruction committee of The Iowa State Bar Association consider ways to improve it to avoid any possible confusion and thus negate the need for repeated challenges to it. Until the committee can do so, I also encourage district courts to at least consider reasonable modifications to clarify the challenged language when requested.